PEOPLE v STEVENS (AFTER REMAND)

Docket No. 110866. Argued March 10, 1999 (Calendar No. 4). Decided
    July 20, 1999. Rehearing denied 461 Mich 1205.

    Eugene C. Stevens was charged in the Detroit Recorder's Court with
        possession with intent to deliver cocaine. The court, Michael F.
        Sapala, J., granted the defendant's motion to suppress evidence
        seized by the police, finding that an entry by the police into the
        defendant's home violated the knock-and-announce statute, that the
        police acted unreasonably in executing a search warrant, that the
        defendant's constitutional guarantee under the Fourth Amendment
        had been violated, that the subsequent search of the home and
        seizure of evidence were constitutionally invalid, and that the
        exclusionary rule should be applied. The Court of Appeals,
        DOCTOROFF, P.J., and MARKMAN and O'CONNELL, JJ., vacated the trial
        court's order and remanded the case for reconsideration in light of
        Wilson v Arkansas, 514 US 927 (1995), in an unpublished order
        (Docket No. 180914). The Supreme Court vacated the order, and
        remanded the case to the Court of Appeals. 453 Mich 904 (1996).
        On remand, the Court of Appeals, DOCTOROFF, P.J. (MARKMAN, J., con-
        curring and O'CONNELL, J., concurring in part and dissenting in part),
        affirmed the trial court's granting of the motion to suppress in an
        unpublished opinion per curiam (Docket No. 199175). The people
        appeal.

    In an opinion by Justice BRICKLEY, joined by Chief Justice
        WEAVER, and Justices TAYLOR, CORRIGAN, and YOUNG, the Supreme
        Court held:

    The trial court erred in granting defendant's motion to suppress
        the evidence because of the violation of the Fourth Amendment.
        Nothing in the wording of MCL 780.656; MSA 28.1259(6) suggests a
        legislative intent to apply the exclusionary rule to violations of the
        knock-and-announce statute.

    1. Generally, when the prosecution can establish by a preponder-
        ance of the evidence that certain evidence ultimately or inevitably
        would have been revealed in the absence of police misconduct, it
        may be admitted. In the present case, the police were acting under
        and within the scope of a valid search warrant. Even though the
        method of entry into the dwelling violated the knock-and-announce

statute, the evidence inevitably would have been discovered. It was not the means of entry that led to the discovery of the evidence; rather, it was the authority of the search warrant that enabled the police to search and seize the contested evidence. Therefore, the searching and seizing of the evidence was independent of the failure to comply with the knock-and-announce statute. Suppression of such evidence would undermine the adversary system by putting the prosecution in a worse position than it would have been in had there been no police misconduct.

2. The knock-and-announce statute does not control the execution of a valid search warrant; rather, it only delays entry by police officers. It is not meant to allow a defendant time to destroy evidence. In this case, the timing of the officers' entry into the home in no way affected the inevitability of the discovery of the evidence.

3. Nothing in MCL 780.656; MSA 28.1259(6) alludes to the exclusionary rule being a valid remedy for its violation. Rather, the Legislature enacted MCL 780.657; MSA 28.1259(7) to serve as a sanction for someone who exceeds or exercises authority unnecessarily when executing a search warrant.

Reversed and remanded.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the knock-and-announce principle has its roots in the Fourth Amendment requirement of reasonableness. It follows that decisions which would curtail this requirement must be carefully scrutinized for intrusion upon the basic requirement embodied in the Fourth Amendment. In *Wilson v Arkansas*, the United States Supreme Court so held. The Court considered an entry to be an integral part of a search and seizure. Wholly absent from its discussion in *Wilson* was any notion that an entry and a search exist as unrelated entities. Rather, the entry itself is an element of the reasonableness of the search. The majority in this case has created a blanket preclusion to the applicability of the exclusionary rule, a notion disapproved by the United States Supreme Court in *Richards v Wisconsin*, 520 US 385 (1997).

Under the majority's holding, the police will determine the reasonableness of a police entry into a residence, and a court will not review a failure to knock and announce for reasonableness under the Fourth Amendment. No exclusionary rule will apply because any evidence will have been inevitably discovered, regardless of how unreasonable the police are in forcibly entering a residence unannounced. Nor will a court ever consider whether a manner of entry amounted to a statutory violation of Michigan's knock-and-announce statute. The decision to charge a statutory violation will

rest solely with the prosecutor. There will, in essence, be a blanket exclusion of a court even considering whether a forcible and unannounced entry into a residence was a violation of the Fourth Amendment's protection against unreasonable searches and seizures.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for the people.

*Robert F. Mitchell* for the defendant-appellant.

AFTER REMAND

BRICKLEY, J. We granted leave in this case to determine whether the Fourth Amendment requires the exclusion of evidence obtained under a valid search warrant, and during a search of proper scope, because of a violation of the "knock and announce" principles.[1] If the Fourth Amendment does not require exclusion, then we must also determine whether evidence obtained after a violation of our "knock and announce" statute must be excluded. Given that the evidence would have been discovered despite any police misconduct and that excluding the evidence because of the misconduct puts the prosecution in a worse position than it would have been without the police misconduct, we hold that the inevitable discovery exception to the exclusionary rule applies in the present case. Additionally, we fail to discern any legislative intent to have the exclusionary rule apply to

---

[1] We note that the prosecution concedes that both the Fourth Amendment and the "knock and announce" statute have been violated in the present case. Therefore, our analysis concerns whether application of the exclusionary rule is the appropriate sanction for either of these violations.

violations of our "knock and announce" statute. Accordingly, the trial court erred in granting defendant's motion to suppress.

FACTS

At approximately 6:00 P.M. on August 10, 1994, the police purchased narcotics from the defendant's female companion. The police then followed the woman to defendant's home where she had told a confidential informant she kept the "stash." After the police determined that the defendant was on probation for a controlled substance conviction, they decided to raid the house. The police obtained a search warrant and arrived back at the house at 12:32 A.M. on August 11, 1994, at which time there were no lights on in the house and the police did not observe any signs of activity or hear any footsteps. The officers knocked on the door repeatedly and announced in a loud voice that they were police officers. After an eleven-second wait, the officers began a forced entry that took an additional fifteen to eighteen seconds. The defendant was found sleeping in his bedroom, which was approximately twenty-five feet from the front door.

Corporal Alex Ramirez of the Dearborn Police Department participated in the raid. He testified that it was the general practice of the Dearborn Police to wait ten or eleven seconds before beginning a forced entry. Additionally, Corporal Ramirez testified that, when executing a search warrant, the Dearborn Police Department made no distinction between daytime and nighttime executions relative to the time the officers wait between the knock and announcement and forcing entry into the dwelling. Ramirez also tes-

tified that the fact that defendant was on probation
for a controlled substance conviction made no differ-
ence in how long Ramirez waited before forcing entry
into the house. The trial court found that this entry
violated the knock-and-announce statute, MCL
780.656; MSA 28.1259(6). Additionally, the trial court
found that the police officers acted unreasonably in
executing the search warrant and that the defendant's
constitutional guarantee under the Fourth Amend-
ment had been violated. Therefore, the subsequent
search and seizure of evidence were constitutionally
invalid, and the exclusionary rule should be applied.
The trial court thus granted the defendant's motion to
suppress.

The prosecutor appealed, and the Court of Appeals
vacated the trial court's order and remanded the case
for reconsideration in light of *Wilson v Arkansas*, 514
US 927; 115 S Ct 1914; 131 L Ed 2d 976 (1995). The
Court of Appeals also gave the prosecution the oppor-
tunity to "establish that, based on particularized facts
known to the police at the time of executing the war-
rant, the threat of physical harm to law enforcement
personnel or the existence of reason to believe that
evidence would likely be destroyed may establish the
reasonableness of an otherwise insufficiently
announced entry."

After being denied rehearing by the Court of
Appeals, the defendant appealed to this Court, argu-
ing that the remand was inappropriate because the
prosecution had conceded that the present record
was adequate and complete on the question of the
sufficiency of the announced entry. This Court agreed
with the defendant, vacated the Court of Appeals
order, and remanded the case to the Court of

Appeals. The Court of Appeals affirmed the trial court's granting of the motion to suppress. The prosecutor now appeals to this Court.

## STANDARD OF REVIEW

This Court reviews a trial court's ruling regarding a motion to suppress for clear error. *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983). However, in the present case, we review the application of a constitutional standard to uncontested facts. "Application of constitutional standards by the trial court is not entitled to the same deference as factual findings." *People v Nelson*, 443 Mich 626, 631, n 7; 505 NW2d 266 (1993). The application of the exclusionary rule to a violation of the knock-and-announce component of the Fourth Amendment is a question of law. "The standard of review is de novo with regard to questions of law." *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

Additionally, we consider whether the evidence obtained after a violation of our "knock and announce" statute must be excluded. Statutory interpretation is a question of law that this Court reviews de novo. *People v Denio*, 454 Mich 691, 698; 564 NW2d 13 (1997).

## ANALYSIS

### I

The prosecutor brings this appeal, arguing that, while the police officers may have violated the knock-

and-announce statute, MCL 780.656; MSA 28.1259(6),[2] the Court of Appeals erred in finding that the exclusionary rule applies where the police make a search of proper scope under a valid warrant.

In deciding to grant the defendant's motion to suppress, the trial court relied upon *People v Polidori*, 190 Mich App 673; 476 NW2d 482 (1991). That Court found:

> Although there is no Michigan case that directly deals with the sanction that should follow a violation of the knock-and-announce statute, we agree with a number of other jurisdictions that the requirement that officers identify themselves and state their authority and purpose before entering a private residence has its roots in the Fourth Amendment.
>
> Consequently, when the method of entry violates the knock-and-announce statute, the exclusionary rule may come into play if the Fourth Amendment standard of reasonableness is also offended. Because the primary purpose of the constitutional guarantee is to prevent unreasonable invasions, if a police officer has a reasonable cause to enter a dwelling to make an arrest, his entry and search are not unreasonable. If the police officers have a basis to conclude that evidence will be destroyed or lives will be endangered by delay, strict compliance with the statute may be excused. Similarly, if events indicate that compliance with the statutory requirements would be a useless gesture, the requirement that the police officers wait for admission may also be excused.

---

[2] MCL 780.656; MSA 28.1259(6) provides:

The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant.

                          *      *      *

> There is no claim that a search carried out in compliance
> with the statute would have resulted in the destruction of
> the evidence, increased the danger to the police officers, or
> been a useless gesture. Under these circumstances, we can
> only conclude that the police officers acted unreasonably
> when they executed the search warrant. Because there was
> no evidence introduced at the suppression hearing to justify
> the simultaneous forced entry of defendant's home, we can
> find no reason to excuse the police officers from complying
> with the requirements of our knock-and-announce statute.
> [*Id.* at 676-678 (citations omitted).]

In affirming the trial court in the present case, the
Court of Appeals relied on *People v Asher*, 203 Mich
App 621, 624; 513 NW2d 144 (1994), in holding that "if
the method of entry violates the knock-and-announce
statute, the exclusionary rule must apply." *People v
Stevens*, unpublished opinion per curiam, issued
October 28, 1997 (Docket No. 199175), slip op at 6. In
*Asher*, the police, in executing a search warrant, vio-
lated the knock-and-announce statute by entering the
residence within five seconds of knocking and
announcing. The *Asher* Court stated, "We would not
conclude that a timing error in the execution of a
valid search warrant offends the Fourth Amendment
reasonableness requirement." *Id.* at 624.[3] However,
the Court felt compelled by Administrative Order No.
1990-6 to follow *Polidori* and suppress the evidence.

---

[3] We note that the United States Supreme Court has held that " 'in some
circumstances an officer's unannounced entry into a home might be
unreasonable under the Fourth Amendment.' " *United States v Ramirez*,
523 US 65, 70; 118 S Ct 992; 140 L Ed 2d 191 (1998), quoting *Wilson v
Arkansas, supra* at 934.

II

We first consider whether police officers' violation of the defendant's Fourth Amendment rights requires exclusion of the evidence. The introduction into evidence of materials seized and observations made during an unlawful search is prohibited by the exclusionary rule. *Weeks v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914), overruled on other grounds in *Elkins v United States*, 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960); *Silverman v United States*, 365 US 505; 81 S Ct 679; 5 L Ed 2d 734 (1961). Additionally, the exclusionary rule prohibits the introduction into evidence of materials and testimony that are the products or indirect results of an illegal search, the so-called "fruit of the poisonous tree" doctrine. *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

The exclusionary rule, which provides for the suppression of illegally obtained evidence, originates in three decisions of the United States Supreme Court around the turn of the century. *Weeks, supra, Adams v New York*, 192 US 585; 24 S Ct 372; 48 L Ed 575 (1904), and *Boyd v United States*, 116 US 616; 6 S Ct 524; 29 L Ed 746 (1886). US Const, Am IV, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Therefore, the Fourth Amendment protects citizens from unreasonable searches and seizures. *Terry v Ohio*, 392 US 1, 9; 88 S Ct 1868; 20 L Ed 2d 889

(1968);  *People v Faucett*, 442 Mich 153, 157-158; 499 NW2d 764 (1993).

The federal constitutional protections against unreasonable searches and seizures have been extended to state proceedings through the Due Process Clause of the Fourteenth Amendment. See *Mapp v Ohio*, 367 US 643, 655; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *People v Nash*, 418 Mich 196, 211; 341 NW2d 439 (1983) (opinion of BRICKLEY, J.); *People v Burrell*, *supra* at 448, n 15. Under the circumstances of this case, art 1, § 11 of the Michigan Constitution is to be construed as providing the same protection as that of its federal counterpart. See *People v Toohey*, 438 Mich 265, 270-271; 475 NW2d 16 (1991), and *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991).[4] Therefore, defendant's motion to suppress implicates his federal constitutional rights. *Faucett*, *supra* at 158.

III

In determining whether exclusion is proper, a court must "evaluate the circumstances of [the] case in the light of the policy served by the exclusionary rule . . . ." *Brown v Illinois*, 422 US 590, 604; 95 S Ct

---

[4] Const 1963, art 1, § 11 provides:

The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.

2254; 45 L Ed 2d 416 (1975). " 'The rule is calculated to prevent, not repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. . . . [D]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.' " *Id.* at 599-600 (citations omitted).

> The exclusionary rule has its limitations . . . as a tool of judicial control. . . . [In] some contexts the rule is ineffective as a deterrent. . . . Proper adjudication of cases in which the exclusionary rule is invoked demands a constant awareness of these limitations. . . . [A] rigid and unthinking application of the . . . rule . . . may exact a high toll in human injury and frustration of efforts to prevent crime. [*Terry v Ohio, supra* at 13-15.]

As stated by this Court:

> The exclusionary rule forbids the use of direct and indirect evidence acquired from governmental misconduct, such as evidence from an illegal police search.
>
> Three exceptions to the exclusionary rule have emerged: the independent source exception, the attenuation exception, and the inevitable discovery exception. [*People v LoCicero (After Remand)*, 453 Mich 496, 508-509; 556 NW2d 498 (1996) (citations omitted).]

In *Nix v Williams*, 467 US 431; 104 S Ct 2501; 81 L Ed 2d 377 (1984), the United States Supreme Court considered whether there is an exception to the exclusionary rule for evidence that inevitably would have been discovered regardless of the constitutional violation. In explaining the deterrent purpose of the exclusionary rule, the Court stated:

> The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired.
>
> By contrast, the derivative evidence analysis ensures that the prosecution is not put in a worse position simply because of some earlier police error or misconduct. [*Nix v Williams, supra* at 442-443.]

The inevitable discovery exception generally permits admission of tainted evidence when the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been revealed in the absence of police misconduct. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 444. If the evidence would have been inevitably obtained, then there is no rational basis for excluding the evidence from the jury. In fact, suppression of the evidence would undermine the adversary system by putting the prosecution in a worse position than it would have been in had there been no police misconduct. *Id.* at 447.

The United States Court of Appeals for the First Circuit set forth the following factors in applying the inevitable discovery doctrine:

[T]here are three basic concerns which surface in an inevitable discovery analysis: are the legal means truly independent; are both the use of the legal means and the discovery by that means truly inevitable; and does the application of the inevitable discovery exception either provide an incentive for police misconduct or significantly weaken fourth amendment protection? [*United States v Silvestri*, 787 F2d 736, 744 (CA 1, 1986).]

In *Wilson, supra* at 937, n 4, the Supreme Court reserved the question whether the inevitable-discovery exceptions to the exclusionary rule apply to searches deemed unreasonable only because officers armed with a warrant failed to make a proper announcement at the door. Footnote 4 states, in relevant part:

Analogizing to the "independent source" doctrine applied in *Segura v United States*, 468 US 796, 805, 813-816; 104 S Ct 3380, 3385, 3389-3391; 82 L Ed 2d 599 (1984), and the "inevitable discovery" rule adopted in *Nix v Williams*, 467 US 431, 440-448; 104 S Ct 2501, 2507-2511; 81 L Ed 2d 377 (1984), respondent and its amici argue that any evidence seized after an unreasonable, unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation. Because this remedial issue was not addressed by the court below and is not within the narrow question on which we granted certiorari, we decline to address these arguments. [*Wilson, supra* at 514 US 937, n 4.]

The dissent contends that there is no indication "that the Court was actually contemplating that a worthy question existed." *Post* at 657. However, in *United States v Ramirez*, 523 US 65, 72, n 3; 118 S Ct 992; 140 L Ed 2d 191 (1998), the Court stated:

> After concluding that the Fourth Amendment had been violated in this case, the Ninth Circuit further concluded that the guns should be excluded from evidence. Because we conclude that there was no Fourth Amendment violation, we need not decide whether, for example, there was sufficient causal relationship between the breaking of the window and the discovery of the gun to warrant suppression of the evidence. Cf. *Nix v Williams*, 467 US 431; 104 S Ct 2501; 81 L Ed 2d 377 (1984); *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

While the Court either declined or found no need to address the issue whether a possible Fourth Amendment violation required suppression of the evidence in both *Wilson* and *Ramirez*, it is quite clear from the Court's statements that there has to be a causal relationship between the violation and the seizing of the evidence to warrant the sanction of suppression.

IV

The Fourth Amendment must be applied under a standard of reasonableness. *Ker v California*, 374 US 23; 83 S Ct 1623; 10 L Ed 2d 726 (1963). "[I]n some circumstances an officer's unannounced entry into a home [notwithstanding a valid search warrant] might be unreasonable under the Fourth Amendment." *Wilson, supra* at 934. "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v Ramirez*, 523 US 71.

"[T]he Fourth Amendment 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.' " *United States v Leon*, 468 US 897, 906; 104 S Ct 3405; 82 L Ed 2d 677 (1984). Repeatedly, the United States

Supreme Court has emphasized "that the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." *Pennsylvania Bd of Probation & Parole v Scott,* 524 US 357, ___; 118 S Ct 2014, 2019; 141 L Ed 2d 344 (1998).

> The Court has stressed that the "prime purpose" of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." Application of the exclusionary rule "is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" Rather, the rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" [*Illinois v Krull,* 480 US 340, 347; 107 S Ct 1160; 94 L Ed 2d 364 (1987) (citations omitted).]

"The purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution." *Colorado v Connelly,* 479 US 157, 166; 107 S Ct 515; 93 L Ed 2d 473 (1986).

> As [a judicially created remedy], the rule does not "proscribe the introduction of illegally seized evidence in all proceedings or against all persons," but applies only in contexts "where its remedial objectives are thought most efficaciously served" . . . . Moreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its "substantial societal costs." [*Scott, supra* at 118 S Ct 2019.]

The exclusionary rule is not meant to put the prosecution in a worse position than if the police officers' improper conduct had not occurred, but, rather, it is

to prevent the prosecutor from being in a better position because of that conduct. *Nix, supra* at 443.

> Significant disincentives to obtaining evidence illegally—including the possibility of departmental discipline and civil liability—also lessen the likelihood that the ultimate or inevitable discovery exception will promote police misconduct. . . . In these circumstances, the societal costs of the exclusionary rule far outweigh any possible benefits to deterrence that a good-faith requirement might produce. [*Id.* at 446.]

The *Nix* Court was addressing whether the prosecution must prove the absence of bad faith when seeking to invoke the inevitable discovery exception. The existence of both state and federal disincentives for police misconduct, other than exclusion of evidence, is also applicable in an analysis of the inevitable discovery exception for violations of the "knock and announce" requirement.

MCL 780.657; MSA 28.1259(7) provides:

> Any person who in executing a search warrant, wilfully exceeds his authority or exercises it with unnecessary severity, shall be fined not more than $1,000.00 or imprisoned not more than 1 year.

Additionally, 42 USC 1983 allows civil remedies when the knock-and-announce principles have been violated.[5] In *Aponte Matos v Toledo Davila,* 135 F3d

---

[5] 42 USC 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

182 (CA 1, 1998), the plaintiffs brought a 42 USC 1983 action against police officers who searched the plaintiffs' home for violation of plaintiffs' Fourth Amendment rights by failing to knock and announce before breaking down the door with an ax. The United States Court of Appeals for the First Circuit found the officers immune because the search took place before the United States Supreme Court's decision in *Wilson* and was, therefore, reasonable. However, implicit in the court of appeals analysis is that subsequent searches that violated *Wilson* would fall within the reach of § 1983.

Admittedly, the exclusionary rule is sometimes needed to deter police from violations of constitutional and statutory protections, even though this may be at a great cost to society. However, in the present case, the evidence would have been discovered despite any police misconduct. Additionally, there are both state and federal disincentives to deter police misconduct.

Given that the evidence would have been inevitably discovered, allowing the evidence in does not put the prosecution in any better position than it would be in had the police adhered to the knock-and-announce requirement. However, excluding the evidence puts the prosecution in a worse position than it would have been in had there been no police misconduct.

---

action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purpose of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, the inevitable discovery exception to the exclusionary rule should be available to the prosecution in the present case.[6]

V

Given that application of the exclusionary rule is not an appropriate remedy for the Fourth Amendment violation in the present case, we now address

---

[6] We note that Michigan courts adhere to the view that a state court is bound by the authoritative holdings of federal courts upon federal questions. However, where there is no decision by the United States Supreme Court and the federal courts disagree on the interpretation of the federal issue, this Court will adopt a view which appears to be most appropriate. *Schueler v Weintrob*, 360 Mich 621, 633-634; 105 NW2d 42 (1960).

While some federal courts have found that the appropriate remedy for a knock-and-announce violation is suppression, see *United States v Bates*, 84 F3d 790, 795 (CA 6, 1996) ("unless exigent circumstances exist, the failure of state law enforcement officials to knock and announce their presence will render the evidence procured during the ensuing execution of a warrant inadmissible"); *United States v Moore*, 91 F3d 96 (CA 10, 1996) (affirming the trial court's suppression of evidence obtained in violation of the "knock and announce" rule); *United States v Marts*, 986 F2d 1216 (CA 8, 1993) (in rejecting the government's good-faith defense, the court held that exclusion is the only appropriate remedy for violations of the "knock and announce" rule), the United States Court of Appeals for the Seventh Circuit stated in dicta that "[i]t is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant . . . ." *United States v Jones*, 149 F3d 715 (CA 7, 1998). Subsequently, the United States Court of Appeals for the Seventh Circuit favorably quoted *Jones* in holding:

[T]he exception that is most pertinent to this case goes by the name of "inevitable discovery" and refuses to suppress evidence seized in an unconstitutional search if it is shown that the evidence would ultimately have been seized legally if the constitutional violation had not occurred. [*United States v Stefonek*, 179 F3d 1030, 1035 (CA 7, 1999), citing *Nix v Williams, supra; United States v Jones, supra; United States v Cabassa*, 62 F3d 470, 472-473 (CA 2, 1995).]

Given that the federal courts disagree on whether the "inevitable discovery" doctrine is applicable to "knock and announce" violations, we feel free to hold that the inevitable discovery exception to the exclusionary rule should be available to the prosecution in the present case.

whether the exclusionary rule is appropriate for the violation of the state statute. "Whether suppression is appropriate is a question of statutory interpretation and thus one of legislative intent." *People v Wood*, 450 Mich 399, 408; 538 NW2d 351 (1995) (BOYLE, J., concurring). "When a statute is clear and unambiguous, judicial construction or interpretation is unnecessary and therefore, precluded." *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992) (citations omitted).

> A fundamental principle guiding this Court is that a clear and unambiguous statute leaves no room for judicial construction or interpretation. *People v Plumsted*, 2 Mich 465, 469 (1853). If, however, judicial interpretation is proper, then this Court must determine the Legislature's intent employing " 'a reasonable construction considering its purpose and the object sought to be accomplished.' Additionally, it is the primary objective in statutory interpretation and construction to effectuate legislative intent without harming the plain wording of the act." *Lorencz, supra* at 377 (citation omitted). Adherence to the language and legislative intent of a statute is essential to ensure that "courts . . . declare the sense of the law" and do not "exercise WILL instead of JUDGMENT . . . ." Hamilton, *The Federalist Papers*, No 78, Kramnick, ed (England: Penguin Books, 1987 [originally published in 1788]), p 440. [*Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993).]

Nothing in MCL 780.656; MSA 28.1259(6) alludes to the exclusionary rule being a valid remedy for violation of the statute. Rather, the Legislature enacted MCL 780.657; MSA 28.1259(7) to serve as a sanction for someone who exceeds or exercises authority unnecessarily when executing a search warrant.[7]

---

[7] The dissent argues that "this Court has, on numerous occasions, been compelled to apply exclusionary sanctions to statutory violations." *Post* at

"The per se exclusionary rule arose out of and applies to constitutionally invalid arrests." *People v Lyon*, 227 Mich App 599, 611; 577 NW2d 124 (1998). In *Lopez v United States*, 373 US 427, 440; 83 S Ct 1381; 10 L Ed 2d 462 (1963), the United States Supreme Court cautioned that to exclude material evidence "must be sparingly exercised" because it would interfere with the function of a criminal trial, which the Court described as the determination of the truth or falsity of the charges.

The Legislature has not chosen to specifically mandate the sanction of excluding evidence seized as a result of the violation of MCL 780.656; MSA 28.1259(6). Nothing in the wording of the statute would suggest that it was the legislators' intent that the exclusionary rule be applied to violations of the "knock and announce" statute. Therefore, we decline to infer such a legislative intent. To do otherwise would be an exercise of *will* rather than *judgment*.

Additionally, the "knock and announce" statute does not control the execution of a valid search warrant; rather, it only delays entry. One stated purpose of this delay by police officers is to allow the occupants "a brief opportunity . . . to order [their] personal affairs before the [officers] enter." *United States v Kane*, 637 F2d 974, 977 (CA 3, 1981).[8] In the

---

649. However, in citing cases where the statutory violations have resulted in suppression, the dissent does not address whether the referenced statutes already contained a remedy or sanction for a violation of those statutes.

[8] In addition to providing an opportunity for an occupant to put his personal affairs in order before the police enter his home, *Kane, supra* at 977, states that the requirement also reduces the potential for violence to both officers and occupants, prevents damage to private property, and symbolizes respect for a person's right to privacy in the home.

present case, the officers were operating under a valid search warrant. The police purchased narcotics from defendant's female companion and followed the woman back to defendant's home. After determining that the defendant was on probation for a controlled substance conviction, the police sought and obtained a search warrant. Neither party contests the validity of the search warrant.

We are persuaded by the rationale employed by the United States Court of Appeals for the Seventh Circuit in *United States v Jones*, 149 F3d 715 (CA 7, 1998). In dicta, that court stated:

> It is hard to understand how the discovery of evidence inside a house could be anything but "inevitable" once the police arrive with a warrant; an occupant would hardly be allowed to contend that, had the officers announced their presence and waited longer to enter, he would have had time to destroy the evidence. [*Id.* at 716-717.]

The officers were armed with a valid search warrant. Defendant does not argue that the officers' search exceeded the scope of that warrant. It was not the means of entry that led to the discovery of the evidence, but, rather, it was the authority of the search warrant that enabled the police to search and seize the contested evidence. Therefore, the searching and seizing of the evidence was independent of failure to comply with the "knock and announce" statute.

As in *Jones*, the discovery of the evidence in the present case was inevitable, regardless of the illegalities on the police officers' entry into defendant's home. One of the purposes of the statute is to allow a defendant a brief opportunity to put his personal affairs in order before the police enter his home.

*United States v Kane, supra* at 977. It is not meant to allow the defendant the time to destroy the evidence. In the present case, the police did not exceed the scope of the search warrant. Therefore, they would have discovered the contested evidence, unless the defendant had been afforded the opportunity to destroy the evidence. The timing of the police officers' entry into the home in no way affected the inevitability of the discovery of the evidence.

## CONCLUSION

In the present case, the police were acting under a valid search warrant and within the scope of that warrant. Even though the method of entry into the dwelling violated the knock-and-announce principles, the evidence inevitably would have been discovered. There are both state and federal sanctions for such violations that serve as deterrents for police misconduct that are less severe than the exclusion of the evidence. Additionally, exclusion of the evidence will put the prosecution in a worse position than if the police misconduct had not occurred. Therefore, we hold that the trial court erred in granting the defendant's motion to suppress the evidence because of the violation of the Fourth Amendment. Additionally, we fail to discern any legislative intent to have the exclusionary rule apply to violations of the "knock and announce" statute.

Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court.

WEAVER, C.J., and TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with BRICKLEY, J.

CAVANAGH, J. (*dissenting*). While the majority offers a plausible rationale for its decision, upon closer scrutiny, acceptance of that rationale requires (1) a willingness to offer a decision that is based, entirely, on dicta from cases which, in fact, did not even approach, much less decide, the question we are presented with today, (2) a willingness to make a substantial departure from the teachings of the United States Supreme Court on Fourth Amendment matters, and (3) a willingness to adopt the prosecutor's artificially divided view of the factual scenario that typically underlies this type of case, a view the likes of which have never been favored by our nation's Supreme Court. Finding myself unwilling to make even one, much less three, of these leaps of "logic," I must respectfully dissent.

I

As an initial matter, I note that I must quarrel with the majority's view that a violation of MCL 780.656; MSA 28.1259(6) would not lead to the application of the exclusionary rule.[1] It is readily perceivable to me that, as found by the very experienced trial judge, the apparent police policy of ten to eleven seconds of waiting before forcing a door, regardless of the hour, was unreasonable at the time of night this warrant

---

[1] I note that, contrary to the majority's effort today, I continue to hold to our past practice (which I fear is rapidly becoming arcane) of insisting that statutory questions that might resolve the case be addressed before constitutional matters are reached. See *Federated Publications, Inc v Michigan State Univ Bd of Trustees*, 460 Mich 75; 594 NW2d 491 (1999) (CAVANAGH, J., concurring).

was executed,[2] and thus I see no cause to upset the trial court's finding. Thus, agreeing with the finding of a violation, I move to address the issue of a sanction for it.

The Legislature has provided, in the course of our knock-and-announce statute, a statutory penalty, MCL 780.657; MSA 28.1259(7), making it a misdemeanor for anyone to exceed his authority or exercise it with unnecessary severity in the course of executing a warrant. It is argued that the existence of this statute precludes us from also applying an exclusionary rule to sanction violation of the knock-and-announce statute.

Notwithstanding this argument, however, this Court has, on numerous occasions, been compelled to apply exclusionary sanctions to statutory violations. Initially, we did so while addressing a denial of a statutory right to immediate bail in *People v Dixon*, 392 Mich 691, 705-706; 222 NW2d 749 (1974), noting that

> [a]ny evidence gained in derogation of this statutory right is to be suppressed; no other remedy is as likely to assure its full enforcement and the protection of the citizenry at large from unwarranted and unnecessary inconvenience, embarrassment and risk attendant incarceration for a minor traffic offense.

From there, we have seen several instances in which statutory violations have resulted in suppression of evidence (i.e., application of an exclusionary rule).[3] Indeed, this practice is so apparent as to have

---

[2] The prosecutor has conceded the absence of exigent circumstances that might excuse a violation of the normal knock-and-announce requirement.

[3] See, e.g., *People v Sherbine*, 421 Mich 502, 512; 364 NW2d 658 (1984), dealing with the requirements for an affidavit in support of a search war-

drawn both discussion and criticism from certain judges and commentators.[4] Likewise, our cases have been sufficiently clear to draw academic criticism toward those few decisions below that have purported to hold that an exclusionary rule can never be applied to a statutory violation.[5]

Moreover, as was correctly noted below, our Court of Appeals has for some time held that the knock-and-announce rule has its basis in the Fourth Amendment and that, where the reasonableness of that mandate is violated, an exclusionary sanction is appropriate. See, e.g., *People v Polidori*, 190 Mich App 673; 476 NW2d 482 (1991). Given that the decision in *Polidori* actually preceded the Supreme Court's recognition of a Fourth Amendment basis for the knock-and-announce principle, and thus came to rest on the appropriate, Fourth Amendment based remedy, I see no reason to turn back the clock to encompass what has previously been a minority view below (and a nonexistent view above).[6] Because the majority, how-

---

rant. "The statutory violation here is clear. The statute requires proof that the informant who supplied the information be credible. The affidavit here failed to satisfy this requirement. The evidence must therefore be suppressed." We also noted that although "the statute is constitutionally based, evidence may be excluded even if the constitutional standards are satisfied if there is noncompliance with the statute." *Id.* at 511-512, n 18, citing *People v Chartrand*, 73 Mich App 645, 652; 252 NW2d 569 (1977).

[4] See *People v Powell*, 201 Mich App 516, 527-530; 506 NW2d 894 (1993).

[5] See Leitman, *A clarification of Michigan law concerning the suppression of evidence seized in violation of a state statute: Exposing the court of appeals blatant disregard for controlling supreme court precedent*, Det C L Mich St U L R 225 (1998).

[6] I would note, as well, that I fear that, realistically, the penalty provision of our knock-and-announce statute providing that violation of the statute is a misdemeanor is likely to be a most ineffectual and underutilized tool for insuring adherence to the statute. Indeed, the corporal testifying to the police practice here showed not the slightest bit of concern that his department has apparently adopted a de facto policy of violating

ever, decides the case on the basis of the constitutional issue, I proceed onward.

II

The majority offers us what is seemingly cast as a view offered by some of our federal circuits, albeit apparently a minority one.[7] In reality, however, what the majority has done is to come very close to itself crafting a conflict among the circuits.[8]

Seeking to bring itself within the confines of *Schueler v Weintrob*, 360 Mich 621, 633-634; 105 NW2d 42 (1960), the majority aims to demonstrate the absence of a United States Supreme Court decision,[9] and a disagreement among the federal circuits, in order for this Court to adopt the view which it deems most appropriate.[10] In doing so, the majority visits on us, by

the statute that would, theoretically, subject him and his fellow officers, to numerous misdemeanor citations. I imagine his lack of concern was well grounded in an assurance that prosecutors will rarely contemplate issuing charges against police officers that might undermine the viability of underlying cases. At oral argument, the Wayne County Prosecutor indicated he was not aware of any occasion when that office ever prosecuted a misdemeanor charge under the statute.

[7] Witness the majority's effort to struggle with the countervailing views of the greater number of the federal circuits in note 6 of their offering.

[8] While this entire area is not without debate, the majority has failed to offer us even a single case that actually *holds* in favor of the sort of rule it suggests, confining itself to two cases that have offered rather controversial assessments solely within the confines of (quite far removed) dicta.

[9] See parts III and IV for a discussion of the Supreme Court case law regarding the issues here.

[10] It would seem to me that such a choice would, in the context of a federal constitutional question, involve an effort to analyze and apply our Supreme Court's teachings in the area at issue. Thus, I am rather puzzled by the majority's parsing of the various cases regarding the inevitable discovery exception to the exclusion of any careful examination of the Court's Fourth Amendment knock-and-announce cases, which would seem to be necessary to determine whether the exception (when both the existence of it and the general rationale behind it are not at issue) is at all

way of the margin, the teachings of two cases, pronounces them fit vehicles to attach our state's jurisprudence to, and moves on. I fear, however, the majority has chosen to burden two most unworthy beasts.

Initially, the majority quotes *United States v Jones*, 149 F3d 715, 716-717 (CA 7, 1998), for the admitted dicta that "[i]t is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant . . . ." What might be hard to understand from that quotation is just how inapplicable that case is to our situation.

As an initial matter, the question before the court in *Jones* was whether evidence that had been seized by other officers from a defendant as he exited a residence should somehow be suppressed on the basis of a purported subsequent knock-and-announce violation that occurred *after* the seizure of the evidence. While the court felt the need to briefly discuss the state of knock-and-announce law in the course of its four paragraph opinion, the most important sentence followed the one quoted above. "But because the entry at the front door played no role in the chain of events leading to Jones's seizure on the lawn, we, too, can leave the inevitable-discovery question for another day."[11] Thus, the Seventh Circuit did not, in *Jones*, apply the inevitable discovery test to a knock-and-announce violation. Rather, it reached the conclusion, fairly obvious from the factual recitation above,

---

consistent with what the Court has told us regarding the place of the knock-and-announce principle in our constitutional jurisprudence.

[11] *Id.* at 149 F3d 717.

that there was simply no causal link between the entry and the *prior* seizure of evidence.[12]

Next we are offered the recent decision of the Seventh Circuit, *United States v Stefonek*, 179 F3d 1030; (CA 7, 1999). Again, while this case might make interesting reading, the case itself pertains to challenges to a warrant for being overbroad. The court, after finding that the evidence would have been discovered in any event, since the search conformed exactly to the parameters discussed in the supporting affidavit (which had inadvertently not been referenced by the warrant itself), did at least apply the inevitable discovery exception, though in the context of an overbroad warrant that failed to address the items to be seized with sufficient specificity.

The court also addressed another purpose of the warrant, "that of informing the person whose premises are to be searched of the scope of the search, so that he (or, as in this case, she) can monitor the search while it is being conducted and make sure it stays within bounds."[13] It was here that the court said "[t]he purpose of handing the occupant (when present) the warrant, like that of the 'knock and announce' rule, is to head off breaches of the peace

---

[12] The actual statement quoted by the majority addressed the argument, made here by the prosecutor and discussed below in the margin that the defendant could hardly be heard to claim he would have used the time taken by the announcement to destroy the evidence. The obvious correctness of that statement, however, seems to have a tendency to lead both some courts and advocates (both the majority and the appellate prosecutor here apparently falling within that group) to ignore the fact that the exigent circumstances exception exists precisely to preclude the favoring of this sort of wrongdoing, and to fail to grasp the application of the prosecutor's concession of an absence of exigent circumstances to remove this entire case from any inquiry of this sort.

[13] *Id.* at 1034.

by dispelling any suspicion that the search is illegitimate."[14] The court found, however, that "[t]his purpose, whatever its precise relation to the Fourth Amendment (*Wilson v Arkansas* [514 US 927; 115 S Ct 1914; 131 L Ed 2d 976 (1995)]) suggests that there may be some, has no relevance to this case; Stefonek was not present when the search was conducted."[15]

Thus, the majority saddles as its standard bearer a case that was decided on another point, and then, in the course of discussing a different point in dicta, mentioned, in passing, the purpose of the "knock and announce" rule only in the course of discussing how it would rule on a situation that factually had not occurred, before actually noting that the facts did not give rise to such a scenario, and therefore that its entire prior discussion "has no relevance." It is from this foundation of sand that the majority builds its decision regarding the "most appropriate" course to follow here.

III

That said, I turn to the constitutional question. It can no longer be seriously disputed that the knock-and-announce principle has its roots in the Fourth Amendment requirement of reasonableness, and that it forms a part of any inquiry into such reasonableness:

At the time of the framing, the common law of search and seizure recognized a law enforcement officer's authority to break open the doors of a dwelling, but generally indicated that he first ought to announce his presence and

---

[14] *Id.* at 1035.

[15] *Id.*

authority. In this case, we hold that this common-law "knock and announce" principle forms a part of the reasonableness inquiry under the Fourth Amendment. [*Wilson*, *supra* at 514 US 929.]

*Wilson* found our Supreme Court offering an extensive survey of the origins of knock-and-announce principles, retrospectively journeying through English cases and commentaries that predate the existence of our nation, all the way to the Magna Carta, and returning through the Court's own past cases. The Court noted that it had dealt with knock-and-announce cases before:

[B]ut we have never squarely held that this principle is an element of the reasonableness inquiry under the Fourth Amendment. We now so hold. Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, we hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment. [*Wilson*, *supra* at 514 US 934.]

Thus, far from being some disposable piece of mere judge-made limitation on police activity, or even a statutory requirement, the basic principle underlying the knock-and-announce requirement is indeed embodied in our constitution. It must follow that decisions which would curtail this requirement must be carefully scrutinized for intrusion upon the basic requirement embodied in the Fourth Amendment.[16]

---

[16]  This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible require-

The majority ventures forth to focus on footnote 4 of *Wilson*, which the majority would read to indicate that "the Supreme Court reserved the question whether the inevitable-discovery exceptions to the exclusionary rule apply to searches deemed unreasonable only because officers armed with a warrant failed to make a proper announcement at the door." *Ante* at 638. Footnote 4 of *Wilson* itself reads:

> Respondent and its amici also ask us to affirm the denial of petitioner's suppression motion on an alternative ground: that exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement. Analogizing to the "independent source" doctrine applied in *Segura v United States*, 468 US 796, 805, 813-816; 104 S Ct 3380, 3385, 3389-3391; 82 L Ed 2d 599 (1984), and the "inevitable discovery" rule adopted in *Nix v Williams*, 467 US 431, 440-448; 104 S Ct 2501, 2507-2511; 81 L Ed 2d 377 (1984), respondent and its amici argue that any evidence seized after an unreasonable, unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation. Because this remedial issue was not addressed by the court below and is not within the narrow question on which we granted certiorari, we decline to address these arguments. [*Wilson, supra* at 514 US 937, n 4.][17]

---

ment of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests. As even petitioner concedes, the common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances. [*Wilson, supra* at 514 US 934 (citations omitted).]

[17] As will be discussed further below, among the amici curiae referred to by the Court in *Wilson* was the very same appellate prosecutor who now appears before us in this action.

While to the extent the Court declined to address a question not before it, one could read this note to "reserve the question," I see no indication that the Court was actually contemplating that a worthy question existed. Moreover, I note that the Court itself suggested the argument relating to the "inevitable discovery" exception of *Nix* was one made by way of analogy, which would seem to suggest that the Court was not of the view that the *Nix* rule was directly applicable to the case before it. Rather than an invitation to sidestep (and, in fact, make ineffectual) the Court's decision, I see in the note only indications of judicial restraint.

Fortifying the suggestion that the majority searches to create a question, where in reality none lies, is the fact that the Court, in two cases involving violations of knock-and-announce principles,[18] ruled in favor of the application of the exclusionary rule. *Miller v United States*, 357 US 301; 78 S Ct 1190; 2 L Ed 2d 1332 (1958), and *Sabbath v United States*, 391 US 585; 88 S Ct 1755; 20 L Ed 2d 828 (1968). Of course, the majority could argue, both of these cases predated the *Nix* decision, and, thus, were one to accept the majority's logic, that subsequent decision undermined the prior rule. I would suggest however, that, where *Nix* did not concern a knock-and-announce case (and could, the Court appears to believe, be arguable toward such a case only by way of analogy), it would seem more prudent for us to follow the law as it currently has been stated by the Court, and leave it to

---

[18] As evidenced in a federal statute, 18 USC 3109, a statute comparable to our own knock-and-announce statute.

the advocates to argue for changes in recognition of subsequent decisions and "newer" logic.

IV

A

The prosecutor suggests that, where the police are in possession of a valid warrant, and yet are somehow deficient in the manner of announcing their entry as they execute the warrant, it is only their entry, not the search itself, that suffers from a taint of unreasonableness. In essence, the prosecutor, and now the majority, are saying that, where the entry is unlawful or unreasonable, the remainder of the search is nonetheless lawful because it occurs pursuant to a (presumably) lawfully obtained and valid warrant.

To accept this argument, one must accept the prosecutor's view of the dichotomy of the situation. The essence of this argument is that the search itself is wholly detached from the execution of the warrant. Whatever happens during the entry, it does not affect the basis for the warrant, and, therefore, the warrant itself remains lawful. Given the presence of this lawful warrant, whatever evidence is in dispute would have been "inevitably" discovered pursuant to the lawful warrant.[19]

---

[19] While the appellant prosecutor takes great effort to note that the only time this will not be the case is where someone utilizes the time between the announcement and entry to destroy the evidence, I find this argument misplaced. Our exigent circumstances exception operates to excuse compliance with knock-and-announce principles where such a danger of destruction is shown to exist, and, thus, in cases such as the one here, where the absence of such circumstances is conceded; while the concern

It must be noted as an initial matter that this argument, quite simply, knows no bounds. Under a rationale such as this, the evidence will always have been "inevitably" discovered. In the majority's view, there is simply no relationship between the knock-and-announce violation and the discovery of the evidence. That said, it must follow that there will *never* be any such relationship, no matter how severe and unwarranted the knock-and-announce violation is.[20]

We are left, by the majority, with a rule which says that, whatever constitutional intrusion there might be under *Wilson*, we simply ignore it and concern ourselves not in the least with either sanctioning it or avoiding encouragement that it might continue.[21] The true effect of the majority's decision is simply to do what it cannot do otherwise, ignore *Wilson*. The result of the majority's effort, however, stands on no firmer ground than would a simple refusal to accept

---

is real enough in general, it is wholly inapplicable and misapplied when offered as an argument here.

[20] Consider that we now see doors being forced open in the course of some search warrant executions by battering rams, and, on occasion, even by armored vehicles. One could easily envision such an extreme form of entry, with an utter absence of announcement, and apply both to a completely innocuous and nonviolent situation where a warrant is to be executed. In the majority's view, such a ridiculous amount of overzealousness would simply have no relationship to the lawfulness of the search, and, thus, the court would have no call to intervene when faced with an obvious violation of the Fourth Amendment's reasonableness requirement, as analyzed by *Wilson*. The shorthand for the majority's rule today is, quite simply, "whatever [constitutional] harm, no foul."

[21] It is worth recalling as well that, even in the face of the various decisions of our Court of Appeals applying the exclusionary rule, the Dearborn police apparently needed no encouragement to adopt a routine of violating both our knock-and-announce statute and undertaking actions that would, at least at some times and in some circumstances, appear to just as routinely violate the Fourth Amendment.

the constitutional nature of the knock-and-announce principle.

Recall again the Court's words in *Wilson*, this time with emphasis added to the applicable section:

> [B]ut we have never squarely held that this principle is an element of the reasonableness inquiry under the Fourth Amendment. We now so hold. Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, *we hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.* [*Id.* at 514 US 934 (emphasis added).]

The Court, quite obviously, considered the entry to be an integral part of the search and seizure. Wholly absent from its discussion is any notion that the entry and the search exist as unrelated entities. Rather, the entry itself is an element of the reasonableness of the search. How that view can be squared with one that would place the two events in separate universes is a question left unanswered by the majority.

B

What is not left unanswered, however, is the question of the use the Supreme Court might have for a rule, such as that offered by the majority, that creates a blanket preclusion to the applicability of the exclusionary rule. In *Richards v Wisconsin*, 520 US 385; 117 S Ct 1416; 137 L Ed 2d 615 (1997), the Court addressed the appropriateness of a Wisconsin rule that provided a blanket exception to knock-and-

announce requirements in felony drug investigations. While that rule dealt with a blanket prospective preclusion of certain situations from a knock-and-announce requirement, and our case deals with a blanket preclusion from the application of the exclusionary rule, the actual effects of such rules are identical: the courts would be prevented from ever applying the exclusionary rule when faced with an unreasonable violation of the knock-and-announce principle.[22]

The Court had little use for such a notion. "We disagree with the court's conclusion that the Fourth Amendment permits a blanket exception to the knock-and-announce requirement for this entire category of criminal activity."[23] After noting that "[t]he question we must resolve is whether this fact justifies dispensing with case-by-case evaluation of the manner in which a search was executed,"[24] the Court answered with a resounding negative. "If a per se exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless."[25]

---

[22] This would be so in Wisconsin by application of a court rule exempting felony drug investigations from knock-and-announce requirements, while in Michigan it would (and will) be true because the majority finds that the exclusionary rule must simply never apply, because the evidence would always have been "inevitably" discovered, regardless of the unreasonableness of the entry.

[23] *Richards, supra* at 520 US 388.

[24] *Id.* at 391-392.

[25] *Id.* at 394.

That per se exception, totally discarding any case-by-case evaluation is, of course, the system the majority leaves us with today. While the majority may well complain that this dissent "equates" the exclusionary rule with the Fourth Amendment (not the case, in fact), one must consider whether the Fourth Amendment will offer any protection beyond the parchment it rests on under the majority's decision.

C

As an initial matter, who will determine the reasonableness of the police entry into a residence? Answer: The police, without the slightest bit of review by any court. Will a court ever review a failure to knock and announce for reasonableness under the Fourth Amendment? Answer: Not unless it has the time and resources to seek enjoyment in meaningless academic exercises. Consider what the result would be if the court found the entry reasonable. Of course, no exclusionary rule would apply. Now consider what the result would be if the court found the entry unreasonable (even drastically so) under even the most conservative reading of the Fourth Amendment. Again, no exclusionary rule would apply, because the evidence would have been "inevitably" discovered, regardless of how unreasonable the police were in forcibly entering the residence unannounced. Regardless of what decision a court might make regarding the reasonableness of the entry, the result would not change, nor would the court be called on to take any action. Such a question would be, quite simply, moot.

Would a court ever consider whether the manner of entry amounted to a statutory violation of our knock-and-announce law? Once again, under the majority's

view, certainly not. The decision to charge a statutory violation rests solely with the elected prosecutor. The court has no call to enter into such a debate, or any place to offer its view.

Will there, then, be a blanket exclusion of a court even considering whether a forcible and unannounced entry into a residence was a violation of the Fourth Amendment's protection against unreasonable searches and seizures? Yes, there will, under the majority's decision today, no such (nonmoot) question will exist for the court to answer. Thus, we are left with exactly the situation the Court rejected in *Richards*, only worse. Not only do we now have a blanket exception to the Fourth Amendment for a certain class of investigations, we have a blanket exception to the Fourth Amendment for *all* cases of forced entries by police that do not comply with knock-and-announce principles. The Court today establishes a rule that such entries will never face judicial review, and, thus, our citizens are subject only to the whims of any governmental agent regarding when and how he may forcibly enter their home.[26]

---

[26] But wait, the majority will cry, we are only discussing situations in which the police have a valid warrant. True enough. And yet, does possession of a valid warrant entitle the police to forcibly crash through the door to one's residence at three in the morning, where there is not the slightest indication that, had he been asked, the homeowner would have done anything but comply in the face of lawful authority? Yes, as of today, it does. The police are left entirely on their own with respect to when and how they choose to execute a search warrant. No longer, says the majority, are there any constitutional questions regarding such an activity. There are, in the majority, those who have forcefully argued that we should be able to presume that our citizens, in the face of lawful authority, will comply with the demands made unto them. *Rogers v Detroit*, 457 Mich 125, 166-167; 579 NW2d 840 (1998) (TAYLOR, J., dissenting). And yet they do not today give our citizens the benefit of the same presumption within the sanctity of their own homes.

D

The majority today has embarked on a path chosen most unwisely. We are not the first Court to be offered such a path, but, unfortunately, appear to be the more gullible. Interestingly, the very prosecutor appearing before us offered the Court in *Wilson* the same opportunity the majority accepts today. Indeed, pages 46-50 of the amicus curiae brief offered in that case are but a concise summary of the arguments presented here. In commenting on the amicus curiae offering in *Wilson*, Justice Stevens, writing for the unanimous Court in *Richards*, noted:

> Although our decision in *Wilson* did not address this issue directly, it is instructive that in that case—which involved a felony drug investigation—we remanded to the state court for further factual development to determine whether the no-knock entry was reasonable under the circumstances of the case. Two amicus briefs in *Wilson* suggested that we adopt just the sort of per se rule the Wisconsin court propounded here. Brief for Americans for Effective Law Enforcement, Inc., et al. as Amici Curiae 10-11, Brief for Wayne County, Michigan, as Amicus Curiae 39-46, in *Wilson v Arkansas*, O.T. 1994, No 5707. Although the respondent did not argue for a categorical rule, the petitioner, in her reply brief, did address the arguments put forward by the amicus briefs, Reply Brief for Petitioner in *Wilson v Arkansas*, O.T. 1994, No. 5707, p 11, and amici supporting the petitioner also presented arguments against a

---

Likewise, the majority's reference to a potential action under 42 USC 1983 is both inapplicable and unpersuasive. Whatever the potential viability of such an action as a form of redress for a knock-and-announce violation, and it is telling that the majority fails to cite a single case where such an action succeeded, civil rights actions are just that, means of civil redress. They offer nothing to a Fourth Amendment analysis of this question, nor do they return to the Fourth Amendment analysis of this state, the *Wilson* element of reasonableness of the entry that the majority has stripped away.

categorical rule. Brief for American Civil Liberties Union et
al. as Amici Curiae in *Wilson v Arkansas*, O.T. 1994, No.
5707, p 29, n 44. Thus, while the prospect of a categorical
rule was one to which we were alerted in *Wilson*, we did
not choose to adopt such a rule at that time. [*Richards*,
*supra* at 520 US 392, n 3.]

E

There are many things not included in my writing
today. Absent is the eloquent recitation of the history
and durability of the knock-and-announce principle,
and its importance to the sanctity of our citizens'
homes. Those things have been well said elsewhere,[27]
and repetition here will add nothing to a decision
poised to disregard what has been known to courts,
commentators, and our framers for hundreds of
years. Likewise, the purposes beyond that sanctity
with which we view one's residence have also been
aptly noted elsewhere,[28] just as they have been
ignored here. Rather, I will conclude with a notion
from the unanimous Court in *Richards*, yet another
that I fear the majority has passed in the night, intent
as it is in reaching its destination:

> It is always somewhat dangerous to ground exceptions to
> constitutional protections in the social norms of a given his-
> torical moment. The purpose of the Fourth Amendment's
> requirement of reasonableness "is to preserve that degree
> of respect for the privacy of persons and the inviolability of
> their property that existed when the provision was
> adopted—even if a later, less virtuous age should become
> accustomed to considering all sorts of intrusion 'reasona-
> ble.' " *Richards*, 520 US 392, n 4, quoting *Minnesota v Dick-*

---

[27] See *Wilson, supra* at 514 US 931-936.
[28] See *Richards, supra* at 520 US 393, n 5.

*erson,* 508 US 366, 380; 113 S Ct 2130; 124 L Ed 2d 334 (1993) (Scalia, J., *concurring*).

"[W]e hold that this common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment,"[29] except, says the majority, in Michigan. Here we need not concern ourselves with such things, the results being "inevitable" in any event. Today, after but a slight polishing, the majority has swallowed whole the tainted apple the Supreme Court declined in *Wilson* and again turned away in *Richards.* The bitterness of its taste may once again force that Court to survey the garden and make for us a better choice. I dissent from the one made today.

KELLY, J., concurred with CAVANAGH, J.

---

[29] *Wilson, supra* at 514 US 929.