SCHUELER *v.* WEINTROB.

1. CHATTEL MORTGAGES—EXECUTION OF INSTRUMENTS.
   Chattel mortgage *held*, to have been executed by bankrupts, father and son, as individuals rather than as partners, under record not containing the mortgage itself but submitting the case on stipulation of facts, pretrial statement, and pleadings.

2. STATUTES—CONSTRUCTION—WORDS IMPORTING SINGULAR NUMBER.
   Words of statutes importing the singular number only, many extend to and embrace the plural number (CLS 1952, § 8.3, subd 2).

3. CHATTEL MORTGAGES—FILING—"MORTGAGOR"—CONSTRUCTION OF STATUTES.
   Statute providing that chattel mortgages "shall be absolutely void as against creditors of the mortgagor * * * unless the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county where the goods * * * are located and also where the mortgagor resides," is construed as requiring a filing in both counties, where there are 2 mort-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 10 Am Jur, Chattel Mortgages § 73.
[2] 50 Am Jur, Statutes § 256.
[3] 10 Am Jur, Chattel Mortgages § 93.
[4] 6 Am Jur, Bankruptcy § 999.
    Priority, as between holder of unfiled or unrecorded chattel mortgage who secures possession of goods or chattels, and subsequent purchaser or incumbrancer. 53 ALR2d 936.
[5] 6 Am Jur, Bankruptcy § 859.
[6] 6 Am Jur, Bankruptcy § 853.
[7] 6 Am Jur, Bankruptcy § 852.
[8] 14 Am Jur, Courts § 121.

gagors residing in different counties, the term "mortgagor" being construed as embracing the plural thereof (CLS 1952, § 8.3, subd 2; CLS 1954, § 566.140).

4. SAME—FILING—REPOSSESSION.

A chattel mortgage which had not been filed with the register of deeds in each county in which the 2 individual mortgagors resided, while normally void as against a general creditor of the mortgagors or a subsequent purchaser or mortgagee in good faith, was not void as to trustee in bankruptcy of the mortgagors, where the mortgagee had foreclosed the mortgage and had taken possession of the property some 7 days before the bankruptcy petitions were filed, and it is not shown there were interim creditors who had extended credit to the bankrupts between the execution of the mortgage and repossession of the property (CLS 1954, § 566.140).

5. BANKRUPTCY—STATUS OF TRUSTEE.

The bankruptcy act gives the trustee in bankruptcy status as a creditor with a lien only as of the date of bankruptcy (11 USC [1958 ed], § 110[c]).

6. SAME—TITLE OF TRUSTEE.

A trustee in bankruptcy is not an innocent purchaser for value, but takes title to the bankrupt's property subject to all liens, claims, and equities existing thereon, and, standing as a creditor, he holds about the lowest form of security (11 USC [1958 ed], § 110[c], [e]).

7. SAME—TITLE OF TRUSTEE—STATE RECORDING LAW.

Whether or not a valid lien on the bankrupt's property existed at the time the trustee took title is dependent upon the recording laws of the State (11 USC [1958 ed], § 110[c], [e]).

8. COURTS—CONSTRUCTION OF FEDERAL STATUTES—PRECEDENTS.

A State supreme court is free to choose an interpretation of a Federal statute which seems most appropriate to it, where the Federal circuit courts of appeals themselves are in disagreement upon the interpretation and there is no decision thereon by the supreme court of the United States.

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted January 13, 1960. (Docket No. 68, Calendar No. 47,934.) Decided September 15, 1960.

Bill by Arthur M. Schueler, receiver and subsequently trustee in bankruptcy for Donald L. Mer-

riam and Merle Merriam, individually and doing business as Merriam's Hardware, against Robert Weintrob and Arthur Weintrob to declare void a chattel mortgage for failure of additional filing in the county where one of the mortgagors resided. Bill dismissed. Plaintiff appeals. Affirmed.

*Wurzer, Higgins & Starrs (Robert A. Macdonell,* of counsel), for plaintiff.

*I. Goodman Cohen (Irving L. Halpern,* of counsel), for defendants.

EDWARDS, J. This appeal requires the construction of a portion of the chattel mortgage filing statute of the State of Michigan (CLS 1954, § 566.140 [Stat Ann 1953 Rev § 26.929]) and of section 70, subd (c) of the Federal bankruptcy statute (11 USC [1958 ed], § 110, subd [c]). Plaintiff-appellant Schueler filed a bill of complaint in Wayne county circuit court, as receiver in bankruptcy of the estates of Donald L. Merriam and Merle W. Merriam, individually and doing business as Merriam Hardware. The bill of complaint sought a decree against defendants-appellees Weintrob declaring a mortgage held by them to be void.

Subsequent to the filing of the bill of complaint, plaintiff-appellant was appointed trustee in bankruptcy of the estates of the Merriams, and the action was continued by him as trustee. The matter was submitted to the circuit court of Wayne county on a written stipulation of facts. Basing his opinion upon his construction of the Michigan chattel mortgage filing statute and a Michigan Supreme Court case, *Peter Schuttler Co.* v. *Gunther,* 222 Mich 430, the chancellor dismissed the bill of complaint. The facts as stipulated by the parties are as follows:

"1. The defendants herein [Weintrob] being the owners and operators of a certain retail hardware business located at 15035 E. Warren avenue, Detroit, Michigan, sold same to Merle W. Merriam and Donald L. Merriam on October 19, 1954, for a total consideration of $17,000, of which $8,000 was paid in cash and the balance of the unpaid balance in the sum of $9,000 was secured by a commercial form chattel mortgage, the bill of sale and chattel mortgage bearing date of October 19, 1954, and possession of said business was given to the purchasers the same date.

"2. That on October 19, 1954, the same date of the transaction, said purchasers, Merle W. Merriam and Donald L. Merriam, father and son, executed a copartnership certificate under the name and style 'Merriam Hardware' at the above address of 15035 E. Warren avenue, Detroit, Michigan. However, the certificate did not indicate whether they 'now' or 'intend' to carry on a business under such name and at such address, the alternative not being crossed out on such certificate.

"3. Both the copartnership certificate and the chattel mortgage were filed and recorded respectively at the office of the county clerk for Wayne county and register of deeds for the county of Wayne on the first next possible date after their execution, to wit, October 20, 1954. The chattel mortgage was not recorded in the county of Oakland.

"4. At the time of the execution of the chattel mortgage and at all times material to this action, Merle W. Merriam resided in Oakland county, Michigan, and continuously and uninterruptedly was employed in an industrial plant in Pontiac, entrusting the care, management, and control of the business to the other copartner, his son, Donald L. Merriam, who at the time of the execution of the chattel mortgage resided in Wayne county, Michigan.

"5. The mortgagors being in default in the payments due on said chattel mortgage, and $8,000 remaining unpaid thereon, the defendants, as mort-

gagees, foreclosed said chattel mortgage on October 4, 1955, and took possession on October 4, 1955, of said chattels through their agent, a constable, and were proceeding to sale set for October 17, 1955, on which date, about 15 minutes before the time set for sale, were served with a restraining order obtained by the receiver in bankruptcy of the mortgagors, who had filed their individual and copartnership bankruptcy petitions on October 11, 1955.

"6. Plaintiff is the trustee in bankruptcy of the mortgagors, having been the receiver in bankruptcy at the time of the commencement of this suit.

"7. Subsequent to adjudication of bankruptcy the parties hereto stipulated that a sale should be had under the direction of the bankruptcy court, and that the proceeds thereof should be held intact to await the determination in this contemplated litigation, said assets covered by the mortgage appraised at the time of its being delivered to the receiver in the sum of $3,216.23 and being sold at auction for $3,044.78, net proceeds being $2,689.64.

"The gist of the lawsuit is the validity of the chattel mortgage and whether the defendants herein, mortgagees, or the plaintiff, trustee in bankruptcy, is entitled to the proceeds of the sale of the assets."

At the outset, the parties read this stipulation of facts differently. Appellees believe that the mortgage was executed by a partnership consisting of the 2 Merriams. Appellant reads the facts as indicating that the 2 Merriams executed the mortgage as individuals. Neither the appendix nor the record on appeal contains the mortgage. But our consideration of the stipulation above, and of the pretrial statement and pleadings, convinces us that the mortgage was executed by the Merriams as individuals.

The language of the filing statute declares:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied

by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be *absolutely void* as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county where the goods or chattels are located, *and also where the mortgagor resides,* except when the mortgagor is a nonresident of the State, when the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county in which the property is located." (Emphasis supplied.) CLS 1954, § 566.140 (Stat Ann 1953 Rev § 26.929).

We note, of course, that the statute employs the term "mortgagor" in the singular. However, a specific Michigan statute requires us to take into account, in construing statutes, that "every word importing the singular number only, may extend to and embrace the plural number." CLS 1952, § 8.3, subd (2) (Stat Ann 1952 Rev § 2.212, subd [2]) ;* *In re City of Detroit,* 261 Mich 278, 283.

Where, as here, one of the mortgagors lived in a county other than that in which the other mortgagor lived and the goods were located, the statute has been held to require filing in both counties. *First National Bank of Marquette* v. *Weed,* 89 Mich 357; *Cappon* v. *O'Day,* 165 Wis 486 (162 NW 655, 1 ALR 1657).

See, also, 10 Am Jur, Chattel Mortgages, § 93.

Thus, as against a general creditor of the mortgagors, or a subsequent purchaser or mortgagee in good faith, this mortgage would be void absent some additional facts.

In this case, however, there were additional facts. The mortgagees foreclosed the mortgage and took

---

* See, currently, PA 1959, No 189 (CL 1948, § 8.3b [Stat Ann 1959 Cum Supp § 2.212(2)]).—Reporter.

possession of the property on October 4, 1955. This was 7 days before the bankruptcy petitions were filed on October 11, 1955.

The purpose of the filing statute is to give notice of indebtedness to any possible creditors. We believe that the taking of possession of the chattels by the mortgagees in this case was equivalent in legal effect to filing. *Parsell* v. *Thayer,* 39 Mich 467; *Waite* v. *Mathews,* 50 Mich 392, *American National Bank of Sapulpa* v. *Harris* (CCA 10), 84 F2d 181.

The first of the cases provides the rationale for this holding (p 469):

"The statute requires neither notice nor filing where there is an immediate and continuous change of possession. * * * Notice by such possession would be the best possible notice under the language of the statute."

It should be noted that in our instant case there is no indication of interim creditors who extended credit to the Merriams in between the execution of the mortgage and the repossession of the property by the mortgagees. Thus, we deal with a problem essentially similar on its facts to those considered by this Court in *Peter Schuttler Co.* v. *Gunther,* 222 Mich 430, and *Riverside Machinery Depot* v. *American Steel Supply Syndicate,* 232 Mich 22, rather than *Ransom & Randolph Co.* v. *Moore,* 272 Mich 31, relied upon by appellant.

In the first 2 cases cited above, there was a chattel mortgage, a failure to file, a foreclosure and repossession of the property by the mortgagee—all preceding the filing of a petition in bankruptcy. In the *Schuttler Case,* the Court held (pp 438, 439):

"The trustee upon his appointment acquired title, rights and powers fixed as of the date of the filing of the petition in bankruptcy. See *Bailey* v. *Baker*

*Ice Machine Co.,* 239 US 268 (36 S Ct 50, 60 L ed 275).

"The trustee became vested on June 22, 1921, and not before, with the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings as to all property in the custody or coming into the custody of the bankruptcy court. But plaintiff had possession of these wagons in its replevin proceeding before that day, and the title was in the custody of the law until final determination of the cause in the courts of the State."

Both the *Schuttler* and *Riverside Cases* were decided when the Federal bankruptcy act, section 47 (a)2, 36 Stat 840, as amended in 1910, provided:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

This language appeared to vest the rights of the trustee in bankruptcy as of the date of filing of the petition in bankruptcy, and the Michigan Supreme Court so held.

Subsequent amendments, however, changed the wording of the pertinent section to some degree until it now reads:

"The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings *at the date of bankruptcy,* shall be deemed vested *as of such date* with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." (Emphasis supplied.)   11 USC (1958 ed), § 110(c).

The statutory language seems to give the trustee status as a creditor with a lien only as of the date of bankruptcy. No contrary purpose may be found in the history of the amendments. See House Report No 1293 on S 88, 81st Congress (1st Sess) (1949), p 4; House Report No 2320 on S 2234, 82d Congress (2d Sess) (1952), pp 2, 16; Weintraub, Levin & Beldock, "The Strong-Arm Clause Strikes the Belated Chattel Mortgage," 25 Fordham L Rev 261, 270.

However, in 1954 the second circuit court of appeals handed down an opinion in *Constance* v. *Harvey*, 215 F2d 571, which held otherwise. On rehearing a case involving New York mortgage law, the court *sua sponte* held that the trustee's rights were not tied to the date of bankruptcy but, by asserting the rights of a mythical "ideal" creditor, the trustee could avoid any chattel mortgage which any creditor could have avoided regardless of whether any such creditor had ever existed or any such avoidance proceedings had ever been instituted.

From *Constance* has sprung a plethora of discussion and disagreement. Although followed in the second circuit (See *In re Gondola Associates, Inc.* [ED NY], 132 F Supp 205, affirmed *sub nom., Conti* v. *Volper* [CCA 2, 1956], 229 F2d 317), it has been squarely rejected in the western district of Missouri (see *In re Billings* [WD Mo], 170 F Supp 253). Even in the *Gondola Case,* the district court was critical (p 205):

"I find it difficult to reconcile the present decision with the equitable purposes of the bankruptcy act, but agree with the referee that the opinion in the *Constance Case* seems to compel such a result; until a possible reconsideration of the subject by a reviewing court, the present duty is clear to deny the petition to review."

The textwriters have been practically unanimous in their criticism of *Constance*. Illustrative of the criticism voiced are 2 following quotations:

"To say, as section 70c does, that the trustee has the rights of a holder of the a lien by legal proceedings is merely a traditional way of expressing the fact that the bankruptcy itself is to be regarded as a general levy. But to hypothecate a nonexistent creditor and allow the trustee to conjure up the most favorable conditions about the time and place under which such 'ideal' creditor (as some of the cases call him) may have extended credit or acquired his lien, is to give the trustee a roving commission to forfeit valid property rights in a manner which would be completely disruptive of all secured credit; one is tempted to add 'to the overthrow of all true and plain dealing, bargaining and chevisance between man and man, without which no commonwealth or civil society can be maintained or continued.'*" MacLachlan, "Secured and Prior Claims in Bankruptcy, H. R. 5195 to Amend the Bankruptcy Act, a Comment," 13 The Business Lawyer (1957–1958), pp 128, 137.

"That the doctrine of the *Constance Case* compels an inequitable result is hardly open to question. In the absence of bankruptcy, no creditor could have challenged the mortgage in the *Conti Case* [*Conti* v. *Volper* (CCA 2, 1956), 229 F2d 317] save one who was such at the time the chattel mortgage was filed. A creditor with a claim coming into existence after the filing of the chattel mortgage could not do so, however long the delay in filing. [*In re Myers* (ND NY, 1926), 19 F2d 600.] Nevertheless, the trustee in bankruptcy, who was not appointed until long after the filing of the mortgage and whose title and rights generally arose as of the date of the filing of the bankruptcy petition, was permitted to take action that no creditor at bankruptcy could take. The trustee represents all creditors. Thus, the avoidance of

---

* 13 Eliz 1, c 5 (1570).

the chattel mortgage inured to the benefit of the general creditors, not one of whom was injured by the belated filing. These general creditors were unjustly enriched at the expense of the mortgagee, whose rights under local law were disregarded. It is inconceivable that congress could have intended such an inequitable result in fashioning the strong-arm provisions of section 70c." Seligson, "Creditors' Rights," 32 NYU L Rev 708, 723.

See, also, Marsh, "Constance v. Harvey—The 'Strong-Arm Clause' Re-Evaluated," 43 Cal L Rev 65, 73–75 (1955).

The National bankruptcy conference approved a proposal to amend section 70(c) so as to overrule the doctrine of *Constance* v. *Harvey.* See 4 Collier on Bankruptcy (14th ed, Moore), 1434, footnotes 40, 41.

Similarly, critical views were expressed by Michigan law journals: 57 Mich L Rev (1959) 1227; 38 MSBJ (October, 1959) 17, Rubiner, "A Cloud on Security Instruments."

In this latter article, the author carefully outlines the efforts made by the Michigan legislature, bankruptcy referees, and Federal district judges to distinguish *Constance,* or to live with it without extending it. See *In re Freedman* (ED Mich), 168 F Supp 25, affirmed *sub nom., Hertzberg* v. *Associates Discount Corporation* (CCA 6), 272 F2d 6, certiorari denied 362 US 950 (80 S Ct 861, 4 L ed 2d 868); *In re Alikasovich* (ED Mich, No. 40542).

Our current problem is made infinitely easier by a subsequent decision of the sixth circuit court of appeals affirming this latter case in an opinion, dated March 7, 1960 (*In re Alikasovich* [*Lewis* v. *Manufacturer's Bank of Detroit*], 275 F2d 454), which we can only read as holding contrary to *Constance* on the crucial interpretation of section 70(c) as far as it relates to Michigan law (pp 456, 457):

"The trouble with *Constance* v. *Harvey,* in our judgment, was in the retroactive extension of the rights of the trustee in bankruptcy to include those of a creditor which did not in fact exist as of a period almost 1 year prior to bankruptcy. The critical time for the accrual of the trustee's rights under section 70, sub c, is 'at the date of bankruptcy' not prior thereto. The trustee can only be 'vested as of such date' with the rights of a creditor 'then holding a lien whether or not such a creditor actually exists.' This means a creditor at that time and not prior thereto. Before *Constance* v. *Harvey,* it had always been understood that the trustee's rights under section 70, sub c, accrued as of the date of bankruptcy and not earlier. There is nothing in the section giving to either the trustee or a creditor rights antecedent to bankruptcy.

"The rights and remedies of the trustee under section 70, subsection e, of the bankruptcy act to reach fraudulent or otherwise invalid transfers or encumbrances must not be confused with his rights under section 70, subsection c. While section 70, subsection e, would permit a trustee to reach invalid transfers or encumbrances whenever they arose, it would afford no remedy here where the lien of the chattel mortgage had been perfected and was valid against creditors long before bankruptcy.

"Section 70, subsection c, gives the trustee the status of a lien creditor as of the date of bankruptcy regardless of whether or not such a creditor existed. It does not give him or the creditor any status earlier than bankruptcy.

"The trustee in bankruptcy is not an innocent purchaser for value. He takes title to the bankrupt's property subject to all liens, claims and equities existing thereon. *Zartman* v. *First National Bank* (1910), 216 US 134 (30 S Ct 368, 54 L ed 418); *Commercial Credit Co.* v. *Davidson* (CCA 5, 1940), 112 F2d 54; *Hoehn* v. *McIntosh* (CCA 6, 1940), 110 F2d 199; *Hertzberg* v. *Associates Discount Corp.* (CCA 6, 1959), 272 F2d 6. In fact the trustee, standing in the

position of a creditor, holds about the lowest form of security.

"Whether or not a valid lien on the bankrupt's property existed is dependent upon the recording laws of the State, *Holt* v. *Crucible Steel Co.* (1912), 224 US 262 (32 S Ct 414, 56 L ed 756).

"As heretofore pointed out, the chattel mortgage of the bank was valid under Michigan law. No creditor could have assailed it prior to bankruptcy. The mortgage was based upon a present consideration. It was filed for record within a reasonable time after its execution. The bankrupt received full value. We see no good reason in this case for extending back retroactively the 'strong arm' of the trustee to a period of 5 months before bankruptcy and invalidating a security valid under State law. The creditors of the bankrupt's estate are entitled to no such windfall.

"The confusion and criticism which followed in the wake of *Constance* v. *Harvey* are not conducive to our following the decision."

In our current case, the mortgagees had foreclosed and repossessed the property 7 days prior to the petition in bankruptcy. Under Michigan law prior to *Constance,* there is no question but that the trustee's attempt to avoid the mortgage would have proved fruitless. See *Schuttler, supra; Riverside, supra.*

Our own view of the language of 70(c) does not support the relation back interpretation of *Constance.* We feel that under 70(c) properly read, the rights accorded the trustee vest "at the date of bankruptcy."

Michigan has, of course, adhered to the rule that a State court is bound by the authoritative holdings of Federal courts upon Federal questions. *Bement* v. *Grand Rapids & Indiana R. Co.,* 194 Mich 64 (LRA 1917E, 322); *In re Hopps' Estate,* 324 Mich 256.

There is, however, no United States supreme court

decision upon the interpretation in question. And where the Federal circuit courts of appeals themselves are in disagreement upon the proper interpretation of a Federal act, we feel free to choose the view which seems most appropriate to us. *Puget Sound Bridge & Dredging Co.* v. *State Unemployment Compensation Commission,* 168 Or 614 (126 P2d 37); *Rohr Aircraft Corporation* v. *County of San Diego,* 51 Cal2d 759 (336 P2d 521).*

See, also, 21 CJS, Courts, § 206, pp 377, 378.

In the present situation, we deal with interpretation of a Federal statute as it relates to State law. We choose to follow the holding of the sixth circuit court of appeals which is the circuit most familiar with Michigan law.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

---

* Note *Rohr Case* reversed on other grounds, 362 US 628 (80 S Ct 1050, 4 L ed 2d 1002).