*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF ATTORNEY GENERAL FOR SUBPOENAS.

ATTORNEY GENERAL,

        Petitioner-Appellee,

v

MARK R. MORTIERE, M.S., D.D.S.,

        Respondent-Appellant.

FOR PUBLICATION
February 26, 2019
9:00 a.m.

No. 342086
Ingham Circuit Court
LC No. 17-000021-PZ

ATTORNEY GENERAL,

        Petitioner-Appellee,

v

VERNON E. PROCTOR, M.D.,

        Respondent-Appellant.

No. 342680
Ingham Circuit Court
LC No. 17-000021-PZ

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 342086, respondent, Mark R. Mortiere, M.S., D.D.S., appeals by right the trial court order granting the request of petitioner, Attorney General, for a subpoena to access Dr. Mortiere's medical records. In Docket No. 342680, respondent, Vernon E. Proctor, M.D., appeals by right the trial court order denying his motion to vacate the court's December 13, 2017 order, granting the Attorney General's request for subpoenas to access the medical records of 11 of his patients. In Docket No. 342086, we affirm. In Docket No. 342680, we reverse and remand for further proceedings.

-1-

## I. BASIC FACTS

With regard to Docket No. 342086, in September 2017, the Department of Licensing and Regulatory Affairs, Bureau of Professional Licensing (the Department) filed a petition for subpoenas, indicating that it had "initiated investigations of licensees . . . or scheduled hearings in contested cases . . . to determine whether disciplinary action should be taken against licensees." Regarding Dr. Mortiere, the Department sought all unredacted records, reports, and other documentation related to Dr. Mortiere's treatment of MG, a former patient. The record reflects that in November 2016, MG sent Dr. Mortiere an amended notice of intent to file a claim of professional negligence against him, but that she ultimately settled the case before commencing a lawsuit. The settlement was for less than $200,000.

The circuit court authorized a subpoena requiring Dr. Mortiere to produce MG's medical records by October 4, 2017. Dr. Mortiere filed a motion to quash the subpoena, which the circuit court denied on November 8, 2017. In the order denying the motion to quash, the court ordered Dr. Mortiere to comply with the subpoena "no later than November 30, 2017." Thereafter, Dr. Mortiere filed an application with this Court for leave to appeal the circuit court's denial of his motion to quash the subpoena. He did not, however, seek to stay the circuit court proceedings. Thus, on December 21, 2017, the Department filed a motion to show cause against Dr. Mortiere. In response, Dr. Mortiere sought a stay of the lower court proceedings, which was denied by the circuit court. Rather than hold Dr. Mortiere in contempt, the circuit court gave him 7 days to comply with its November 8, 2017 order. Dr. Mortiere also sought a stay in this Court; however, we denied his motion for a stay pending appeal. Further, this Court denied Dr. Mortiere's application for leave to appeal "for failure to persuade the Court of the need for immediate appellate review." *In re Petition of Attorney General for Subpoenas*, unpublished order of the Court of Appeals, entered January 17, 2018 (Docket No. 341250).

With regard to Docket No. 342680, on December 12, 2017, the Department filed a petition for subpoenas. Relevant to Dr. Proctor's appeal, the Department indicated that it was investigating Dr. Proctor's "treatment of patients and/or controlled substance prescribing practices[.]" The Department sought all records, reports, and other documentation pertaining to 11 John and Jane Doe patients, as well as "[a]ll employment and records including any medical (non-substance abuse) records pertaining to Vernon Proctor M.D." The record reflects that Dr. Proctor provided substance abuse treatment to 11 patients from June 1, 2015, to June 1, 2016. The Department stated that it sought the limited disclosure of information under 42 CFR 2.66, that limited disclosure "is the most effective means to investigate the matter at hand," and that "this petition is the most effective means to investigate the matter at hand." The Department also indicated that it was seeking information that was "necessary to the investigation" and that "all unique identifiers may be deleted from the records of the licensee's patients."

The circuit court ordered Dr. Proctor to produce the records, and it ordered that the subpoenas could only be used to investigate Dr. Proctor's treatment of the patients or his controlled substance prescribing practices and "shall not be used for the purposes of investigating or prosecuting the patients themselves." The court further directed that "all unique identifiers of patients shall be deleted or blocked out from all documents" before any disclosure to the public and that disclosure was to be limited "to those persons whose need for the information is related to the investigation of the licensee or any following administrative

licensing action." The court stated that patients need not be expressly notified that their records were being disclosed, but any patient would be given the opportunity to seek revocation or amendment of the order under 42 CFR 2.66(b). Accordingly, the court issued a subpoena that sought the listed patients' treatment information from June 1, 2015, to June 1, 2016, and Dr. Proctor's employment records. The subpoena provided a list of fictitious names and the corresponding patient names and dates of birth.

Dr. Proctor filed a motion to vacate the circuit court's order authorizing the subpoenas. In pertinent part, Dr. Proctor argued that the patients "may be addiction patients" subject to special confidentiality protections under 42 USC 290dd-2 and there was a criminal penalty for improperly disclosing patient records. Dr. Proctor argued that 42 CFR 2.64(b) required both the record holder and patients to be given the opportunity to file a written response to the application to compel disclosure of information, which had not occurred in this case. Finally, Dr. Proctor argued that the court's order was insufficient under 42 CFR 2.64(d) because it did not provide that good cause existed to obtain the order, including, that other ways to obtain the information were unavailable or ineffective, or that the public interest and need for disclosure outweighed the potential injury to the patient.

The Department responded that on November 30, 2017 it had issued an order limiting Dr. Proctor's medical license to preclude him from prescribing "schedules 2-3 controlled substances for a minimum one year," and on January 2, 2018, it had suspended Dr. Proctor's controlled substances license for six months and one day. It argued that without access to review the patients' charts, the Department was "unsure if Dr. Proctor is providing substance abuse treatment to the patients in question." Additionally, the Department denied that patients must be notified and given an opportunity to respond to disclosures of their records because this case concerned an administrative proceeding under 42 CFR 2.66 and not a civil proceeding under 42 CFR 2.64. The Department denied that the regulations required a hearing on the application for an order when the application was sought under 42 CFR 2.66. Finally, the Department argued that its application set forth good cause for seeking the disclosures and the court's order properly limited the disclosures.

Following a hearing on the motion, the circuit court concluded that the applicable section of regulations was 42 CFR 2.66 because it applied to investigations initiated by administrative or regulatory agencies, such as the Department. The court determined that 42 CFR 2.66 provided its own notice provisions, and only incorporated portions of 42 CFR 2.64. The court reasoned that the incorporated portions—42 CFR 2.64(d) and (e)—only required the court to limit the disclosures, which it had done. The court further determined that any prohibition against disclosing confidential patient communications was subject to the "unless" provision in 42 CFR 2.63, which provided that disclosure could occur if " 'the disclosure is necessary to protect against an existing threat to life or of serious bodily injury.' " The court held that the national opioid epidemic was such a threat, so it denied Dr. Proctor's motion to vacate the subpoena.

## II. DOCKET NO. 342086

### A. JURISDICTION

The Department argues that this Court lacks jurisdiction over Dr. Mortiere's appeal as an appeal of right. Specifically, the Department contends that the January 10, 2018 "show cause order" appealed from is a civil order of contempt, which is not a final judgment appealable as of right. In support, the Department directs this Court to *In re Moroun*, 295 Mich App 312; 814 NW2d 319 (2012) (opinion by K. F. KELLY, J.). In that case, this Court stated that "an order finding a party in civil contempt of court is not a final order for purposes of appellate review." *Id*. at 329. Yet, contrary to the Department's assertion on appeal, the January 10, 2018 order is not an order holding Dr. Mortiere in civil contempt. Rather, that order states the court granted the Department's motion to show cause, and it directed Dr. Mortiere to fully comply with the September 27, 2017 subpoena and the court's November 8, 2017 order no later than January 17, 2018. There is simply nothing in the order stating that the court was holding Dr. Mortiere in civil contempt. Moreover, the court expressly stated that it did not want to do so. Accordingly, the Department has not established that the order appealed from is not appealable of right on the ground that it is a civil contempt order.[1]

### B. COLLATERAL ATTACK

Next, the Department argues that Dr. Mortiere's appeal of the circuit court's January 10, 2018 order is an improper collateral attack of the court's November 8, 2017 decision on his motion to quash the subpoena. "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding[.]" *Workers' Compensation Agency Dir v MacDonald's Indus Prods, Inc (On Reconsideration)*, 305 Mich App 460, 474; 853 NW2d 467 (2014). As explained by our Supreme Court,

> The final decree of a court of competent jurisdiction made and entered in a proceeding of which all parties in interest have due and legal notice and from which no appeal is taken cannot be set aside and held for naught by the decree of another court in a collateral proceeding commenced years subsequent to the date of such final decree. [*Dow v Scully*, 376 Mich 84, 88-89; 135 NW2d 360 (1965) (quotation marks and citation omitted).]

In this case, however, Dr. Mortiere is not challenging the court's decision in a previous proceeding, in a second, or subsequent proceeding. The record reflects instead that he is challenging an earlier order entered in the same proceeding, namely, the November 8, 2017 order denying his motion to quash the subpoena. Dr. Mortiere applied for leave to appeal the

---

[1] Even if this Court does not have jurisdiction to hear an appeal as of right, this Court may exercise its discretion by treating a party's appeal as an application for leave to appeal, granting leave, and addressing the issues presented on their merits. See *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

November 8, 2017 order, but this Court denied leave "for failure to persuade the Court of the need for immediate appellate review." *In re Petition of Attorney General for Subpoenas*, unpublished order of the Court of Appeals, entered January 17, 2018 (Docket No. 341250). Thus, given the "nonsubstantive disposition," no appellate court has yet weighed in on the merits of Dr. Mortiere's claim. See *People v Willis*, 182 Mich App 706, 708; 452 NW2d 888 (1990) (stating that when this Court denies leave "for failure to persuade the Court of the need for immediate appellate review," the order is "a nonsubstantive disposition"). Moreover, decisions of a court that were not appealable as of right can be challenged in a subsequent appeal by right. See *In re KMN*, 309 Mich App 274, 279 n 1; 870 NW2d 75 (2015). Thus, we discern no impropriety in reviewing the merits of the November 8, 2017 order denying the motion to quash the subpoena.

## C. MOOTNESS

The Department next argues that this Court should dismiss this appeal as moot. "Michigan courts exist to decide actual cases and controversies, and thus will not decide moot issues." *Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013). "A matter is moot if this Court's ruling 'cannot for any reason have a practical legal effect on the existing controversy.'" *Id.*, quoting *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). However, the disclosure of a previously unknown fact to a party does not necessarily render an issue moot if this Court's ruling can still have a practical legal effect on an existing controversy. *Cooley Law Sch*, 300 Mich App at 254-255.

In this case, the Department sought to subpoena MG's records on the basis that they were required in the case of "Complaint No. 147769," which was "Bureau of Professional Licensing v Mark Mortiere D.D.S." There is no indication in the record that the licensing controversy between the parties has ended. And, were this Court to conclude that the circuit court improperly issued the subpoena, Dr. Mortiere could argue that the information that the Department improperly obtained should not be used against him in the licensing controversy. Accordingly, even though previously unknown facts have been disclosed, this Court's decision can have a practical effect on the controversy between the parties.

## D. MERITS

Dr. Mortiere argues that the circuit court improperly issued a subpoena for MG's medical records because the Department had no authority to seek a subpoena where MG's settlement was his only settlement within the last five years and was for an amount less than $200,000. When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). The language of the statute itself is the primary indication of the Legislature's intent. *Id*. This Court should read phrases "in the context of the entire legislative scheme." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 528; 817 NW2d 548 (2012). This Court reads subsections of cohesive statutory provisions together. *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). Additional language should not be read into an unambiguous statute. *McCormick v Carrier*, 487 Mich 180, 209; 795 NW2d 517 (2010).

MCL 333.16221 provides that the Department has the ability to investigate health profession licensees under certain circumstances. MCL 333.16231 lists several circumstances under which the Department may initiate an investigation. At issue in this case, subject to an exception that does not apply here, MCL 333.16231(2)(a) provides that a panel of board members may review an allegation regarding a licensee's file under MCL 333.16211(4) and, if it determines that there is a reasonable basis to believe that the licensee violated the Public Health Code, it may authorize the Department to investigate. MCL 333.16231(2)(a). MCL 333.16231(4) provides that the Department *shall* initiate an investigation if it receives information reported under MCL 333.16423(2) that indicates a licensee has three or more malpractice settlements, awards, or judgments within a five-year period, or one or more malpractice settlements that total $200,000 in a five-year period.

Additionally, MCL 333.16231(2)(b), which is not at issue in this case, provides that the Department shall initiate an investigation if it receives one substantiated allegation or two or more investigated allegations in a four-year period from persons or governmental entities who believe that the licensee violated the Public Health Code. MCL 333.16231(3), which is also not at issue, provides that if the Department receives a written allegation from a governmental entity more than four years after an incident, the Department *may* initiate an investigation "in the manner described in" MCL 333.16231(a) or (b), but it is not required to do so.

Reading these provisions in their contexts, MCL 333.16231 provides four means by which an investigation into a licensee's conduct may commence: the Board may authorize an investigation if it receives an allegation and determines there is a reasonable basis to investigate; the Department shall investigate if it receives a number of substantiated or investigated allegations from persons or governmental entities in a four-year period; the Department may investigate if it receives a written allegation from a governmental entity that is more than four years old; and the Department shall investigate if it receives information that the licensee has three or more malpractice settlements, or any number of settlements totaling more than $200,000, in a five-year period. Because these provisions are alternatives, it is irrelevant whether the Department met the requirements to investigate under § 16231(4) so long as it met the requirements to investigate under § 16231(2). Nothing in the statutory language conditions every investigation on first having met the requirements of § 16231(4), and from the context of these highly precise statutes, with their many cross-references, this Court will not read such a requirement into § 16231(2).

In sum, the circuit court did not err by failing to quash the subpoena because MCL 333.16231, when read in context, provides several alternative options for the Department to initiate an investigation, and it was sufficient for the Department to show that it met the requirements of § 16231(2).

### III. DOCKET NO. 342680

Dr. Proctor argues that an addiction patient's records cannot be disclosed without a hearing and that the circuit court's order did not comply with the regulatory requirements necessary to authorize the release of those records.

42 USC 290dd-2 provides that patient treatment records

which are maintained in connection with the performance of any program or activity related to substance abuse . . . treatment . . . shall, except as provided in [42 USC 290dd-2(e)[2]], be confidential and be disclosed only for the purposes and under the circumstances expressly authorized and permitted under [42 USC 290dd-2(b)].

In turn, 42 USC 290dd-2(b)(1) provides that patient records may be disclosed "with the prior written consent of the patient . . . ." 42 USC 290dd-2(b)(2) indicates that patient records may be disclosed under three other circumstances, with specific requirements for disclosure under each. Only 42 USC 290dd-2(b)(2)(C) is relevant to this case, and it provides as follows:

If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

Next, 42 CFR 2.61(a) provides that "[a] subpoena or a similar legal mandate must be issued in order to compel disclosure. This mandate may be entered at the same time as and accompany an authorizing court order . . . ." 42 CFR 2.62 provides that a court "may authorize disclosure and use of records to investigate or prosecute qualified personnel holding the records" under 42 CFR 2.66. In turn, 42 CFR 2.66(a)(1) provides that a court may issue an order authorizing the disclosure of records "to investigate or prosecute . . . the person holding the records . . . in connection with a criminal or administrative matter[.]"[3] In order to receive such a disclosure, the order "may be applied for by any administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the program's or person's activities." 42 CFR 2.66(a)(1). The application "must use a fictitious name" to refer to a patient and may not disclose patient identifying information unless the patient has provided written consent or the court has properly sealed the record. 42 CFR 2.66(a)(2).

"An application under this section may, in the discretion of the court, be granted without notice." 42 CFR 2.66(b). However,

---

[2] This subsection exempts the interchange of records within the Uniformed Services and Department of Veterans Affairs.

[3] In contrast, 42 CFR 2.64(a) provides that "any person having a legally recognized interest in the disclosure which is sought" may apply for an order authorizing the disclosure of patient records, either separately or as part of a civil proceeding.

upon implementation of an order so granted any of the above persons must be afforded an opportunity to seek revocation or amendment of that order, limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the court order in accordance with § 2.66(c). [42 CFR 2.66(b).]

In turn, 42 CFR 2.66(c) provides that "[a]n order under this section must be entered in accordance with, and comply with the requirements of, paragraphs (d) and (e) of § 2.64."

42 CFR 2.64(d) provides the following criteria for entering an order:

*Criteria for entry of order.* An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 CFR 2.64(e) provides that an order authorizing disclosure must limit disclosure to "those parts of a patient's records which are essential to fulfill the objection of the order" and "to those persons whose need for the information is the basis for the order," and that the order must provide for any necessary measures to protect the patient, physician-patient relationship, and treatment services, such as by "sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record has been ordered." 42 CFR 2.64(e)(1) to (3).

In this case, Dr. Proctor averred that he was providing substance abuse treatment to the patients in question. 42 USC 290dd-2 applies to patients receiving substance abuse treatment. Accordingly, the information concerning Dr. Proctor's patients falls under this statutory and regulatory scheme. The Department argues that it was required to comply with § 2.66, not § 2.64. The Department's argument, while technically correct, is not determinative. However, 42 CFR 2.66 incorporates § 2.64(d) and (e), and it is these provisions that Dr. Proctor argues the circuit court did not adequately comply with.

We agree that the circuit court's order did not adequately comply with 42 CFR 2.66(d). 42 USC 290dd-2(b)(2)(C) provides that a court must assess good cause before authorizing an order that releases a patient's substance abuse treatment records. 42 CFR 2.64(d)(1) requires the court to find that other ways of obtaining the information are not available or would not be effective, and 42 CFR 2.64(d)(2) requires the court to weigh the need for the information against the potential injury. 42 USC 290dd-2(b)(2)(C) specifies that when authorizing an order, "[i]n assessing good cause the court *shall* weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." (Emphasis added.) The term "shall" is mandatory. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). Here, the court's order did not comply with 42 CFR 2.64(d)(1) because the court did not determine whether there were other ways of obtaining the necessary information.

Additionally, the court's orders did not comply with 42 USC 290dd-2(b)(2)(C) or 42 CFR 2.64(d)(2) because it did not make any finding of good cause before it released the patients' records. The court's initial order contained no findings regarding good cause, and ultimately, both of the court's orders are devoid of any determination of good cause.[4] Finally, the court's order did not comply with 42 USC 290dd-2(b)(2)(C) or 42 CFR 2.66(d)(2) because it did not weigh mandatory factors before authorizing a disclosure.

We acknowledge that the circuit court's order partially complied with 42 CFR 2.66(e). It limited the disclosure of the patients' treatment records by providing that "all unique identifiers of patients shall be deleted or blocked out from all documents" before any disclosure to the public, and that disclosure was to be limited "to those persons whose need for the information is related to the investigation of the licensee or any following administrative licensing action." However, 42 CFR 2.64(e)(3) also requires the court to protect the patient, physician-patient relationship, and treatment services by "other measures as are necessary to limit disclosure," such as by ordering that any proceedings at which the records are to be used are sealed from public scrutiny. The court's order did not order that the administrative proceedings were to be closed and sealed to protect the patient's records. Accordingly, for these reasons, we conclude that the trial court failed to follow the mandatory procedural safeguards before ordering the disclosure of records in this case.

Next, Dr. Proctor argues that the court erred by authorizing the release of records without holding a hearing. "The interpretation of a federal statute is a question of federal law." *Auto-Owners Ins Co v Corduroy Rubber Co*, 177 Mich App 600, 604; 443 NW2d 416 (1989). When there is no conflict among federal authorities, this Court is bound by the holding of a federal court on a federal question. *Schueler v Weintrob*, 360 Mich 621, 633-634; 105 NW2d 42 (1960). There are two federal decisions addressing these regulations—a criminal case from the United States Court of Appeals for the First Circuit, *US v Shinderman*, 515 F3d 5 (CA 1, 2008) (holding that disclosure of the defendant's records under 42 CFR 2.66 without compliance with 42 CFR 2.64(d) and (e) did not warrant suppression of the evidence where the defendant had not moved to revoke or amend the disclosure), and a civil case from the Eleventh Circuit, *Hicks v Talbott Recovery Sys, Inc*, 196 F3d 1226 (CA 11, 1999) (concerning a treatment facility's negligent release of confidential information).

In *Hicks*, the Texas Board of State Medical Examiners obtained a subpoena of the patient's treatment records. *Hicks*, 196 F3d at 1230. The plaintiff's substance abuse treatment facility released those records to the Texas Board. *Id*. The patient later sued the treatment facility after he was disciplined, lost his job, and became unable to find employment. *Id*. at

---

[4] This error is not harmless. This Court will not modify a decision of the trial court on the basis of a harmless error. MCR 2.613(A). In this case, the court did not even find good cause *after* it issued its order. During the motion to quash the subpoena, the court addressed only one side of the equation—the public interest and need for disclosure—without addressing the other side— the injury to the patient, physician-patient relationship, and treatment services. Accordingly, the court never properly considered the issue of good cause.

1234-1236. The Eleventh Circuit Court of Appeals noted that the subpoena from the Texas Board did not comply with 42 CFR 2.64,[5] and that

> [t]hese stringent federal regulations include application for disclosure using a fictitious name, adequate notice to the patient, a closed judicial hearing, a judicial determination that good cause exists to order disclosure because no other feasible method is available for obtaining the information and the need for disclosure outweighs injury to the patient and the physician-patient relationship, and an order delineating the parts of the patient's records to be disclosed as well as limiting the persons to whom disclosure is made. [*Hicks*, 196 F3d at 1242 n 32.]

In this case, the court determined that no hearing was required before issuing the subpoena. However, at this time, the only available authority is that a closed judicial hearing is required before a court may order the release of a substance abuse patient's confidential medical records. Thus, the court erred when it determined that no hearing was required and when it failed to hold a hearing.[6]

Finally, we note that the court erred by determining that redaction of the patients' confidential communications to Dr. Proctor was not required because there was a threat to life or of serious bodily injury. The court's reasoning and conclusion are not sound when the regulation is read in context. The full text of 42 CFR 2.63, concerning confidential communications, is as follows:

> (a) A court order under the regulations in this part may authorize disclosure of confidential communications made by a patient to a part 2 program in the course of diagnosis, treatment, or referral for treatment *only if*:

---

[5] 42 CFR 2.64(c) provides:

> (c) Review of evidence: Conduct of hearing. Any oral argument, review of evidence, or hearing on the application must be held in the judge's chambers or in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record, unless the patient requests an open hearing in a manner which meets the written consent requirements of the regulations in this part. The proceeding may include an examination by the judge of the patient records referred to in the application.

[6] However, contrary to Dr. Proctor's arguments on appeal, there is no authority to support that *patients* must be notified before such a hearing. The only requirement is that of "adequate notice[.]" *Hicks*, 196 F3d at 1242 n 31. 42 CFR 2.66(b) provides that the court may, in its discretion, grant an application "without notice," but that it must afford patients an opportunity to revoke or amend its order. Thus, there is no legal support for Dr. Proctor's argument that patients must be given notice before the court authorizes the order.

-10-

(1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, *including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties*;

(2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime allegedly committed by the patient, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or

(3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications. [Emphasis added.]

The word "including" generally indicates a nonexhaustive list of examples. *Thorn v Mercy Mem Hosp Corp*, 281 Mich App 644, 651; 761 NW2d 414 (2008). However, when general terms and specific terms are placed together, the general term is generally interpreted to include things of the same types or kinds as the specific terms. *Neal v Wilkes*, 470 Mich 661, 669; 685 NW2d 648 (2004).

Here, the court determined that redaction was not required because the national opioid epidemic was such a threat. A national epidemic does not fall within the same types or kinds of threats to life as child abuse and neglect or threats against third parties, which are personal threats of harm *by the patient*. A national epidemic is neither personal nor will it be found in a patient communication. Accordingly, absent additional evidence, the court erred by concluding that it was not necessary to redact confidential communications from patients to Dr. Proctor. The general threat of an opioid epidemic is not specific enough to fall within the exception in § 2.63(a)(1).[7] To the extent that the patients' records contained communications from the patients to Dr. Proctor, the court was required to order those records redacted unless the communications contained circumstances similar to suspected child abuse or verbal threats.

In sum, because the court failed to follow mandatory procedural safeguards before ordering the disclosure of records in this case, we reverse the circuit court's order and remand for further proceedings. On remand, the trial court shall order the medical records returned to Dr. Proctor and shall not grant a new subpoena ordering the disclosure of the records to the Department without first making all the findings required by the statute. Before making those findings, the court must hold a closed hearing on the matter.

---

[7] Additionally, of these sections, 42 CFR 2.63(a)(3) is specific to administrative proceedings. In this case, there is no indication that the patients have testimony or other evidence pertaining to the extent of the communications, and thus there is no indication that 42 CFR 2.63 applies in this case to any confidential communications.

In Docket No. 342086, we affirm the circuit court's order. In Docket No. 342680, we reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra