*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 2, 2020

Plaintiff-Appellant,

v

No. 348846
Wayne Circuit Court
LC No. 19-000526-01-FH

ANTHONY LEMAR NEWMAN,

Defendant-Appellee.

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

JANSEN, J. (*concurring in part, dissenting in part*.)

I agree with the majority that the arrest of defendant, Anthony Lemar Newman, was made in violation of MCL 764.2a. However, I disagree that the arrest was otherwise constitutional. I would affirm the circuit court's order granting defendant's motion to quash the information and dismissing all charges against defendant. On that basis, I respectfully dissent.

It is undisputed in this case that the Detroit Police Department was openly policing outside of its jurisdiction in violation of MCL 764.2a. Accordingly, I believe defendant's arrest, stemming from the execution of a search warrant, was unconstitutional. The search warrant in this case should never have been issued by the circuit court. Detroit Police Officer William Morrison, of the Narcotics Enforcement Section/Major Violators Unit, swore in his affidavit accompanying the complaint that he had received a tip from an *unregistered*[1] confidential informant that defendant was selling narcotics out of a home in Inkster, Michigan. Instead of calling or otherwise notifying the Inkster Police Department, Officer Morrison and his team took it upon themselves to leave their jurisdiction–the City of Detroit–and use the Detroit Police Department's resources to conduct surveillance on defendant in Inkster.

---

[1] Although not an issue in this case, I would note that the "unregistered" status of a confidential informant calls into question the veracity of any information provided by that confidential informant. This is particularly true when such information provides the basis of an affidavit used to obtain a search warrant.

Obviously, some activity consistent with selling narcotics was observed during this surveillance. Again, Officer Morrison failed to contact the Inkster Police Department or the Michigan State Police before submitting a sworn affidavit truthfully detailing his non-MCL 764.2a-compliant policework in order to obtain a search warrant. In my view, that warrant should not have been granted where the Detroit Police Department went "rogue" and used resources paid for by Detroit taxpayers to police in the City of Inkster without coordinating their efforts with the Inkster Police Department or the Michigan State Police. The Detroit Police Department was acting outside of its jurisdiction, "without a warrant, not in hot pursuit, and not in conjunction with law enforcement officers having jurisdiction. Thus . . . [the Detroit Police] had no greater authority than a private person." *People v Hamilton*, 465 Mich 526, 530-531; 638 NW2d 92 (2002).

A Wayne County Circuit Court Judge, acting in place of a magistrate, then rubber stamped this rogue policing by granting a search warrant. I find this troubling, particularly where the prosecution, in its brief on appeal and again when pressed during oral argument, failed to provide any reasonable explanation as to why the Detroit Police Department, acting ultra vires, was policing in Inkster as opposed to Detroit and why their actions were necessary. As a matter of public policy, the Detroit Police Department, the Wayne County Prosecutor's Office, and all Michigan courts should be concerned that any law enforcement agency within this state was acting without authority and outside of their jurisdiction and then enlisted the help of our courts to support their illegal conduct. Allowing Michigan courts to permit any police department to engage in flagrant abuses of policing power sets a dangerous precedent, and threatens the constitutional rights of all people to be free from unreasonable searches and seizures. See U.S. Const., Am IV; Const 1963, art 1, § 11. Regardless, the warrant was issued, and Officer Morrison and his team proceeded to use more of the Detroit Police Department's resources to execute the search warrant in Inkster without the help of the Inkster Police Department or the Michigan State Police. In light of the foregoing, I would conclude that the circuit court did not err by granting defendant's motion to quash.

Briefly, I disagree with the majority's conclusion regarding the applicability of *People v Meyer*, 424 Mich 143; 379 NW2d 59 (1985) to this case. Defendant argues on appeal that *Meyer* supports his position that police officers, acting outside of their bailiwick, may not gather evidence, investigate, or ferret out criminal activity and then use that information to obtain a search warrant. Further, defendant argues, such conduct would invalidate a warrant on constitutional grounds. The majority disagrees, concluding that "defendant's argument under *Meyer* is entirely unavailing and in fact supports reversal of the circuit court's ruling." Indeed, the *Meyer* Court was clear that "under the facts of [that] case," the defendant was not entitled to dismissal of the charges against him where a single police officer, acting outside of his bailiwick while making an illegal narcotic purchase while undercover, could still swear to the felony complaint or act as a complaining witness. *Meyer*, 424 Mich at 160-162.

The *Meyer* Court several times touched on the fact that the police officer's contact with the defendant was limited, and after the officer swore to the complaint six months after the initial encounter, he had no further connection to the case. *Id.* at 152, 156. The *Meyer* Court also touched on the fact that the officer involved did not arrest the defendant. *Id.* at 155. That factual scenario is much different from the case at bar, and I believe this case is distinguishable from the conclusion reached in *Meyer* on that basis. Not only did the Detroit Police Department conduct surveillance on defendant outside of their jurisdiction, the same officers swore to the complaint, executed the

search warrant, and participated in defendant's arrest; the taint of misconduct is present in all aspects of the police work. The conduct of the team of police officers responsible for defendant's arrest well exceeds the conduct of the solo officer in *Meyer*. As the *Meyer* Court aptly quoted Justice William Rehnquist: "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction[.]" *Meyer*, 424 Mich at 156, quoting *Rochin v California*, 342 US 165; 72 S Ct 205; 96 L Ed 183 (1952). I believe this is that case.

The *Meyer* Court also noted, "[a]s a general rule, peace officers who make a warrantless arrest outside their territorial jurisdiction are treated as private persons, and, as such, have all the powers of arrest possessed by such private persons. In such cases, the officers' actions are lawful if private citizens would have been authorized to do the same." *Meyer*, 424 Mich at 154-155 (footnotes omitted.) The *Meyer* Court concluded, however, that because the officer did not "make an *arrest* at the time he purchased" narcotics from the defendant, that rule was inapplicable. However, an arrest did occur in the present case, and as discussed, I believe that arrest was warrantless. "The constitutional validity of an arrest depends on whether probable cause to arrest existed at the moment the arrest was made by the officer." *Hamilton*, 465 Mich at 533, quoting *People v Lyon*, 227 Mich App 599, 611; 577 NW2d 124 (1998). Without a warrant in this case, the Detroit Police Department did not have probable cause to arrest defendant, a private citizen in his home located outside of their jurisdiction. Moreover, if the Detroit Police had the same authority as a private citizen under these circumstances, *Hamilton*, 465 Mich at 531, I have yet to find any authority that permits a private citizen to enter the home of another to search for drugs and weapons, and thereby make an arrest of the presumed homeowner.

Michigan jurisprudence is clear that even if an arrest results from a statutory violation, the exclusionary rule is not necessarily triggered unless the defendant was deprived of any constitutional rights. However, as discussed *supra*, I believe defendant's right to be free from unreasonable searches and seizures was violated, and therefore this case requires the application of the exclusionary rule to the "fruit" of defendant's arrest. In *People v Frazier*, 478 Mich 231; 733 NW2d 713 (2007), our Supreme Court thoroughly laid out the purpose of the exclusionary rule:

> The suppression of evidence should be used only as a last resort. *Hudson v Michigan*, 547 US 586; 126 S Ct 2159; 165 L Ed 2d 56 (2006). "[T]he exclusionary rule is 'a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of constitutional rights. . . .' " *People v Anstey*, 476 Mich 436, 447-448; 719 NW2d 579 (2006), quoting *People v Hawkins*, 468 Mich 488, 512-513; 668 NW2d 602 (2003) (emphasis deleted); see also *Michigan v Tucker*, 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974), quoting *United States v Calandra*, 414 US 338, 347; 94 S Ct 613; 38 L Ed 2d 561 (1974) ("[T]he exclusionary rule's 'prime purpose is to deter future unlawful police conduct. . . .' "). " 'The rule is calculated to prevent, not to repair. It's purpose is to deter – to compel respect for the constitutional guaranty in the only effectively available way – by removing the incentive to disregard it.' " *Id.*, quoting *Elkins v United States*, 364 US 206, 217; 80 S Ct 1437; 4 L Ed 2d 1669 (1960). The judicially created rule is not designed to act as a personal constitutional right of the aggrieved party.

*Calandra*, *supra* at 348; 94 S Ct 613. "[T]he proper focus is on the deterrent effect on law enforcement officers, if any." *People v Goldston*, 470 Mich 523, 539; 682 NW2d 479 (2004).

\* \* \*

"[A]pplicaiton of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served," *Calandra, supra* at 348; 94 S Ct 613, "that is, 'where its deterrence benefits outweigh its "substantial social costs," ' " *Hudson, supra* at 2163, quoting *Pennsylvania Bd of Probation & Parole v Scott*, 524 US 357, 363; 118 S Ct 2014; 141 L Ed 2d 344 (1998), quoting *United States v Leon*, 468 US 897, 907; 104 S Ct 3405; 82 L Ed 2d 677 (1984). "Because the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: it undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions." *Scott, supra* at 364; 118 S Ct 2014. the United States Supreme Court has "repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule." *Id*. at 364-365; 118 S Ct 2014. Because of the costs associated with applying the exclusionary rule, the Court has been cautious against expanding it. *Hudson, supra* at 2163. In determining whether exclusion is proper, a court must " 'evaluate the circumstances of [the] case in the light of the policy served by the exclusionary rule. . . .' " *Stevens, supra* at 635, 597 NW2d 53, quoting *Brown v Illinois*, 422 US 590, 604; 95 S Ct 2254; 45 L Ed 2d 416 (1975).

\* \* \*

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force. [*Tucker, supra* at 447; 94 S Ct 2357.]

This Court has previously opined that application of the exclusionary rule is inappropriate in the absence of governmental misconduct. [*Frazier*, 478 Mich at 246-250 (footnotes omitted).]

Again, the Detroit Police Department admitted in the affidavit sworn to by Officer Morrison that they engaged in willful misconduct: policing outside of their jurisdiction in violation of MCL 764.2a. In my view, this misconduct has deprived defendant of a constitutional right. Moreover, defendant's arrest and the seizure of guns and narcotics from his home were the direct result of that misconduct, and the attenuation exception to the exclusionary rule would not apply because the connection between the illegality and the "fruits of the poisonous tree" has not been

dissipated. *Frazier*, 478 Mich at 253. I would conclude that the deterrence of future willful misconduct by the Detroit Police Department heavily outweighs any truth-seeking or law enforcement objectives at play. The circuit court was correct to dismiss the charges against defendant given the Detroit Police Department's brazen disregard for defendant's constitutional rights.

I would affirm.


/s/ Kathleen Jansen